**No. 25-2394**

_____

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

---

ROBERT RAYA,

*Plaintiff-Appellant*,

v.

CALBIOTECH, INC.; DAVID BARKA; NOORI BARKA; EVELYN BARKA;
CALBIOTECH, INC. 401(K) PROFIT SHARING PLAN; CALBIOTECH INC.
PENSION PLAN,

*Defendants-Appellees*.

On Appeal from the United States District Court
for the Southern District of California
No. 3:19-cv-02295-WQH-AHG
Hon. William Q. Hayes

---

## APPELLANT'S INFORMAL OPENING BRIEF

---

Robert E. Raya
2401 Seaside St #218
San Diego, CA  92107
(619) 864-8501
robertraya@gmail.com

*In Pro Se*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................ iii, iv

INTRODUCTION ............................................................................................. 1

JURISDICTIONAL STATEMENT .................................................................. 1

ISSUE(S) PRESENTED .................................................................................. 2

STATEMENT OF THE CASE ......................................................................... 4

ARGUMENT .................................................................................................. 17

      I.     Interference With Third Party Subpoenas] ......................................... 17

      II.    Summary Judgment Dismissal of Pension Plan Claims ..................... 20

      III.   Possession And Submission Of Forged Documents .......................... 30

      IV.   Waived Or Forfeited Defense ............................................................ 33

      V.    Late And Inadmissible Evidence ....................................................... 37

CONCLUSION ............................................................................................... 42

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adickes v. S.H. Kress & Co.*,
 398 U.S. 144, 159-60, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)............24

*Brown v. Deputy No. 1*,
 12-CV-1938-GPC BGS, 2014 WL 842946 at *3 (S.D. Cal. Mar. 4,
 2014).........................................................................................................18

*Brown v. Roe*,
 279 F.3d 742, 744 (9th Cir.2002).......................................................38

*Bell v. Wilmott Storage Servs., LLC*,
 12 F.4th 1065, 1068 (9th Cir. 2021)....................................................21

*Clare v. Clare*,
 982 F.3d 1199, 1201 (9th Cir. 2020).....................................................38

*Cf. Cunningham v. Hamilton County*,
 527 U.S. 198, 205-06 (1999)...................................................... 12, 34

*El-Hakem v. BJY Inc.*,
 415 F.3d 1068, 1077 (9th Cir. 2005)....................................................36

*Engelhard Indus., Inc. v. Rsch. Instrumental Corp.*,
 324 F.2d 347, 352 (9th Cir. 1963)........................................................10

*F.D.I.C. v. Jackson*,
 133 F.3d 694, 700 (9th Cir. 1998).......................................................22

*Fonseca v. Sysco Food Servs. of Arizona, Inc.*,
 374 F.3d 840, 846 (9th Cir. 2004)......................................................32

*Fox Indus., Inc. v. Gurovich*,
 No. CV-03-5166-TCP-WDW, 2006 WL 2882580........................7, 19

*Ingenco Holdings, LLC v. Ace Am. Ins. Co.*,
 921 F.3d 803, 808 (9th Cir. 2019)............................................... 18, 32

*Lofton v. Verizon Wireless, LLC*,
 308 F.R.D. 290 (N.D. Cal. 2015)..............................................7, 19

iii

*Owens v. Kaiser Found. Health Plan, Inc.*,
    244 F.3d 708, 713 (9th Cir. 2001)................................................................35

*Price v. Trans Union, LLC*,
    847 F. Supp. 2d 788, 793 (E.D. Pa. 2012) ................................... 19, 20

*Rivera v. Corrections Corp. of Am.*,
    999 F.3d 647, 651 (9th Cir.2021)................................................................21

*Sali v. Corona Reg'l Med. Ctr.*,
    884 F.3d 1218, 1221 (9th Cir. 2018)........................................... 17, 32

*Sarkis v. Yolo Cnty. Pub. Agency Risk Mgmt. Ins. Auth.*,
    WL 4864857, at \*2 (E.D. Cal. July 31, 2023) ...................................37

*United States v. First Nat'l Bank of Circle*,
    652 F.2d 882, 886 (9th Cir. 1981)................................................................36

**Statutes**

28 U.S.C. § 1291.................................................................................1

28 U.S.C. § 1331.................................................................................1

29 U.S.C. § 1109 (a) (ERISA)................................................................6

29 U.S.C. § 1132 (ERISA) ...............................................................1, 6

29 U.S.C. § 1140 (ERISA) ..................................................................6

**Regulations**

26 CFR § 1.401(a)(4)-11(g)(3)(iii)..................................................24

**Rules**

FRAP 4(a)..........................................................................................2

FRCP 45...........................................................................................19

FRCP 54..............................................................................................2

iv

## INTRODUCTION

This informal style brief is submitted by pro se plaintiff/appellant Robert Raya. Mr. Raya worked as a scientist for Calbiotech between 2008 and 2016. Mr. Raya filed his original ERISA complaint in December 2019 against his former employer Calbiotech, Inc. and Calbiotech retirement plan fiduciaries. Mr. Raya never received Plan Documents for his retirement plan during the time of his employment. After Mr. Raya made a written request for Plan Documents in 2016, he was terminated.

Mr. Raya's complaint seeks plan benefits, and alleges breach of fiduciary duty and interference with ERISA rights and wrongful termination.

Defendants filed a counterclaim for breach of contract for violation of a separation waiver that was executed when Raya was terminated. Plan Documents, describing Raya's ERISA rights, were produced to Mr. Raya for the first time one week after Mr. Raya executed the waiver.

## JURISDICTIONAL STATEMENT

This is an appeal from the District Court for the Southern District of California. The District Court exercised jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e) (ERISA).

This court has jurisdiction to consider this appeal pursuant to 28 U.S.C. § 1291. The Court's final judgment, which disposes of all parties' claims, was filed on August 13, 2024 (ECF No. 206).

Following a post-judgment motion to amend, filed under FRCP 52(b) on September 10, 2024, and a post-judgment motion for attorney fees, filed under FRCP 54 on August 28, 2024, the District Court entered a final order, disposing of all post-judgment motions, on March 10, 2025 (ECF No 221).

Robert Raya filed the Notice of appeal on April 6, 2025 (ECF No. 222). This appeal is timely pursuant to F.R.A.P. 4(a)(1)(A) and F.R.A.P. 4(a)(4)(A) (tolling time to file Notice until after the resolution of certain post-judgment motions).

## ISSUES PRESENTED

**Pretrial Rulings**

1. Whether the district court erred when finding Defendants did not interfere with Plaintiff's document subpoenas despite the fact that Defendants' sent letters to recipients saying "we request you not comply…".

2. Whether the district court erred when it decided not to consider until after trial the fact that Defendants introduced a forged document as one of their trial exhibits.

**Regarding Summary Judgment Dismissal of Pension Benefit Claims**

3. Whether the district court erred in holding that Mr. Raya lacked standing where he sufficiently alleged, and presented evidence, that the version of the Pension Plan documents produced in 2018 plainly and clearly conferred eligibility on Mr. Raya.

4. Whether the district court erred when basing their summary judgment decision on the credibility of Defendant David Barka.

5. Whether the district court erred when finding that Mr. Raya's showing that the plain language of the Pension Plan Documents confers eligibility onto Mr. Raya was untimely.

**Regarding Final Judgment**

6. Whether the district court erred when it considered a waived or forfeited defenses and relied on that defense in their final judgment

7. Whether the district court erred when considering inadmissible evidence.

8. Whether the court erred when finding that Mr. Raya knowingly and voluntarily waived his ERISA rights when he signed the 2016 severance agreement, despite the fact that Calbiotech withheld the Summary Plan Documents from Mr. Raya until after he executed the waiver.

## STATEMENT OF THE CASE

Between 2008 and 2016, Robert Raya (Plaintiff / Appellant) worked as a scientist for Calbiotech, Inc.[1], a small private San Diego biotech company, owned and operated by Defendant Noori Barka. .

Calbiotech sponsors two qualified retirement plans: the Calbiotech, Inc. 401(k) Profit Sharing Plan (the 401(k) Plan), and the Calbiotech, Inc. Pension Plan (the Pension Plan). Defendant Calbiotech is the named Plan Administrator for both plans. Defendants Noori Barka, Evelyn Barka, and David Barka are named Trustees and Fiduciaries of both plans.

Mr. Raya became a participant in the 401(k) Plan in September 2009. No Summary Plan Description or any other 401(k) Plan Document was provided or produced to Mr. Raya during the time of his employment between 2008 and 2016. (Plaintiff's Trial Exhibit 9, pg. 7)

Mr. Raya made his first written request for Plan Documents on July 26, 2016. Mr. Raya made a second request for Plan Documents on August 8, 2016. Mr. Raya conducted searches for Plan Documents on Calbiotech's intranet in October or November on 2016. Mr. Raya received notice of his immediate

---

[1] Mr. Raya took a 7-month leave in 2011, in which he resigned in March 2011 and was rehired in September 2011

termination, via SMS text message, on November 29, 2016. (Plaintiff's Trial Exhibit 20, pg. 2)

In the five years leading up to Mr. Raya's termination, Raya received four raises and 4 promotions, with the final raise and promotion occurring in July 2016, just five months before his termination in November of 2016. (ECF No. 200, pg. 10)  Mr. Raya's termination notice did not include a reason for his immediate termination.  Days later, Calbiotech informed Mr. Raya that he was terminated because his position had been eliminated. (ECF No. 195, pg. 215-216)

Mr. Raya was never enrolled in the Pension Plan and the existence of the Pension Plan remained hidden from Mr. Raya until 2018.  In 2018, Mr. Raya requested a copy of the Pension Plan documents that were in effect during the time of his employment.  In 2018 Calbiotech produced the Pension Plan documents[2] in response to Raya's request and those documents plainly and clearly conferred eligibility on Mr. Raya and "all employees[3]".  (ECF No. 135, Exh 1, pg. 4)

In 2018 Mr. Raya made a claim for Pension Benefits to Calbiotech (the plan Administrator).  In 2019, Calbiotech denied Raya's claim based on an amendment

---

[2] The complete Pension Plan Adoption Agreement and the Pension Basic Plan Document are within the Administrative Record, which is attached to Raya's SAC and to Defendants' September 2021 motion, ECF No, 74 at Exhibit E.  The Adoption Agreement is AR000382-AR000408.  The Basic Plan Document is at AR000450-AR000547.

[3] The Plan excludes certain types of employees, none of which apply to Mr. Raya because Raya is a U.S. citizen and he is not a union employee and he did not become an employee through a merger.

5

to the Pension Plan ("the Amendment") which Calbiotech claimed to have just "recently discovered". This disputed amendment purports to amend section 2 of the Pension Plan Adoption Agreement with exclusionary language stating: "all of the Employees other than [7 named individuals] are not participants under the Pension Plan". (ECF No. 135, Exh 2, pg. 1)

Mr. Raya disputes the authenticity and enforceability of the Amendment and Raya contends the Amendment shows signs of backdating. The Amendment does not appear in the plan documents that were produced to Mr. Raya in 2018. (ECF No. 135, Exh 1) Calbiotech claims the Amendment was created and executed in 2008, but it contains the name of an employee who was hired in 2011. (ECF No. 135, Exh 2, pg. 2)

On December 2, 2019, Mr. Raya filed his original complaint in the U.S. District Court for Southern District of California on behalf of himself, both retirement plans, and similarly situated individuals. Mr. Raya filed his Second Amended Complaint (ECF No. 64) on September 8, 2021, alleging four claims under ERISA. The first claim in the SAC seeks 401(k) Plan and Pension Plan benefits under 29 U.S.C. § 1132(a)(1)(B). The second and third claims allege failure to discharge fiduciary duties under 29 U.S.C. § 1109(a) and 1132(a)(2) and 1132(a)(3). The fourth claim alleges wrongful termination, retaliation, and interference under 29 U.S.C. §1140 and 1132(a)(3).

6

## I. Subpoena Interference

On January 14, 2022, Raya served document subpoenas on Calbiotech's actuary and other third parties, requesting copies of 401(k) and Pension Plan documents. (ECF No. 129, Raya Decl. Exh 1)  On January 26, 2022, one week prior to the subpoena's requested production date, Defendants' attorney Corey Schechter contacted each subpoena recipient by letter to request that they not comply with the subpoena.  Defendants' letter stated:

> "Please be advised that my clients will be making an objection to this subpoena.  …We respectfully request based on our challenging the subpoena that you not produce any documents to the requesting party prior to the challenge hereto being resolved by the Court or the subpoena being withdrawn by the plaintiff."  (ECF No. 129, Raya Decl. Exh. 3)

Defendants never filed any objection or challenge with the district court. Two of the subpoena recipients chose not to produce any responsive documents. (ECF No. 143, pg. 5)

On September 7, 2022 Mr. Raya filed a motion for sanctions (ECF No. 129) against Defendants for interfering with Raya's subpoenas.  In December 2022 the district court denied Raya's request for sanctions (ECF No. 143), stating:

> "Here, unlike in *Gurovich* [*Fox Indus., Inc. v. Gurovich*, No. CV-03-5166-TCP-WDW, 2006 WL 2882580], Defendants' counsel requested that Pelion, John Hancock, and Principal not comply with Plaintiff's subpoena, but did

7

not order them not to or otherwise usurp the authority of the court." (ECF No. 143, pg. 7) and

"Thus, the Court finds that Defendants did not act in bad faith to interfere with Plaintiff's third party subpoenas. *See, e.g.*, *Lofton v. Verizon Wireless, LLC*, 308 F.R.D. 290 (N.D. Cal. 2015)" (ECF No. 143, pg. 8)

## II. Defendants' Motion For Summary Judgment

In November 2021, Defendants filed their Motion for Summary Judgment (ECF No. 83), requesting summary judgment on the first three claims in the SAC.

Defendants' motion asserts the Amendment to the Pension Plan is authentic. Defendants' motion does not address the undisputed fact that the Amendment does not appear in the Pension Plan documents produced to Raya in 2018. Defendants' motion does not address the undisputed fact that the Amendment contains the name of an employee that was hired in 2011 (over two years after the amendment was supposedly created in 2008). These undisputed facts are detailed in the SAC (ECF No. 64, pg. 5-6), but Defendants addressed them for the first time in their Reply brief (ECF No. 90, pg. 2-3).

Defendants' summary judgment motion argued:

"[B]ecause the Amendment … is legally enforceable for the reasons previously noted by Defendants in their opposition to Plaintiff's first motion for partial summary judgment, Defendants respectfully request the Court enter partial summary judgment in their favor…" (ECF No. 83, pg.11).

8

Defendants' motion offers no clarification on which previously noted reasons they are referring to. Defendants offer no page numbers or docket numbers that the reader can refer to.

On March 28, 2022, the district court granted summary judgment in favor of Defendants (ECF No. 114), stating:

> "[Defendant] David Barka, the Vice President of Calbiotech and a Trustee of the Pension Plan, states in a sworn Declaration that the 2008 Amendment relied on in this Order is "[a] true and correct copy" of the 2008 Amendment to the Pension Plan and "was adopted/executed by Calbiotech concurrently with the Adoption Agreement on December 28, 2008." (ECF No. 74-2 ¶ 9). Plaintiff has not come forward with any evidence that the 2008 Amendment is not authentic or that the dates listed in the 2008 Amendment are false." (ECF No. 114, pg. 6; 26:28)
>
> "The Court concludes that Defendants are entitled to partial summary judgment as to the first three claims to the extent they assert ERISA violations relating to the Pension Plan." (ECF No. 114, pg. 15:16)

The district court's summary judgment order does not address or mention the fact that the Amendment does not exist within the Pension Plan Adoption Agreement sent to Raya in 2018, and the order does not address or mention the fact that the Amendment claims to be written in 2008 but contains the name of an employee that was hired for the first time in 2011. Both of these facts were raised in Mr. Raya's Response to Defendants' motion (ECF No. 87, pg. 2) and both of these facts were also detailed in the SAC (ECF No. 64, pg. 5-6).

9

On June 15, 2022, Mr. Raya asked the district court to reconsider the dismissal of his Pension claims (ECF No. 120[4]). In his June 2022 motion to reconsider, Raya demonstrated how the controlling language of the Pension Plan's Basic Plan Document[5] makes the 2008 Amendment unenforceable. (ECF No. 120, pg. 7-9) Article 2 of the Basic Plan Document states:

> "[E]ligibility requirements… in Section 2 of the Adoption Agreement…
> [are] *subject to* the following:
> All Employees shall be eligible for participation in the Plan…".

The Amendment purports to amend Section 2 of the Adoption Agreement, but does not claim to amend the controlling language in the Basic Plan Document.

The district court denied Raya's motion, not based on the merit of his argument, but on the timeliness of it, stating:

> "The Court concludes that Plaintiff has failed to show that the Basic Plan
> document was "newly discovered or unknown" to him or that Plaintiff
> "could not with reasonable diligence have discovered and produced" the
> Basic Plan document. *Engelhard Indus., Inc. v. Rsch. Instrumental Corp.*,
> 324 F.2d 347, 352 (9th Cir. 1963)" (ECF No. 127, pg. 6) and

> "To the extent that Plaintiff instead seeks reconsideration on the basis that
> the Court's Summary Judgment Order was manifestly unjust, Plaintiff must
> demonstrate the existence of an error that is "direct, obvious, and

---

[4] Raya filed a total of three motions for reconsideration regarding the summary judgment dismissal of his Pension Plan claims. ECF No. 120 is his second motion.
[5] The Pension Plan Adoption Agreement and the Basic Plan Document are two distinct documents which, together, make up the terms that govern the operation of the Pension Plan. (ECF No. 83, SSUF No. 4)

observable." and "Reconsideration on the basis of manifest injustice is denied because Plaintiff has failed to demonstrate clear error and his failure to raise his arguments in a timely manner precludes a finding of manifest injustice." (ECF No. 127, pg. 6)

## III.    Falsified Evidence

Defendants and their attorneys introduced a forged document as their trial exhibit.  On January 20, 2023, Defendants served and filed their Trial Exhibit List with the Court (ECF No. 147, Exhibit 1) and also emailed and served hard copies of their Trial Exhibits to Mr. Raya. (ECF No. 154, pg.3)  Defendants' original Trial Exhibit AK purports to be a copy of the 2016 401(k) Plan Adoption Agreement and it contains a signature page in which a date has been altered and is different than the date that appears in previously produced copies of this page.  (ECF No. 154, pg.4-5, Exhibits 2 and 3)

Defendants do not deny that someone changed the date on the Adoption Agreement signature page within their Trial Exhibit and that the date is different than the date within the copy of this document as it appears within the Administrative Record (ECF No. 161, pg. 5).  Defendants' attorneys do not deny that they submitted this falsified document as their original Trial Exhibit AK. Record (ECF No. 161, pg. 5-6)

11

In March 2023 Mr. Raya filed a motion for sanctions (ECF No. 154) against Defendants for introducing a forged copy of the 2016 401(k) Adoption Agreement as one of Defendants' trial exhibits.

In April of 2023 the district court declined to consider sanctions, stating:

"Deferring consideration of any request for sanctions based on Defendants' alleged falsification or misrepresentation of plan documents until after the trial of this action will allow the Court to rule on a more fully developed evidentiary record, promote judicial economy, and better facilitate adjudication of this action on the merits. *Cf. Cunningham v. Hamilton County*, 527 U.S. 198, 205-06 (1999)."  (ECF No. 164, pg.5)

## IV.    Forfeited/Waived Defenses

At the November 2023 trial, Defendants raised the defense that Raya was terminated for "a culmination of bad performance" (ECF No. 195, pg. 110), despite the fact that Defendants failed to articulate that defense in their Answer (ECF No. 115) or in the final Pretrial Conference Order (ECF No. 186)  or in any motion throughout the years-long litigation.  The only reason for Mr. Raya's termination provided within his complete personnel file states that Mr. Raya's "position was eliminated". (Plaintiff's Trial Exhibit 16, pg. 24)

Defendants raised the new "bad performance" defense to the court for the first time in their Memorandum of Contentions of Fact and Law (ECF No.147, pg. 23) on January 21, 2023, over six years after Raya's termination in 2016 and over

three years after Raya filed his complaint in 2019 and one year after the close of discovery in January 2022.

Raya immediately objected to this defense and Defendants subsequently omitted the disputed defense two weeks later from the Proposed Final Pretrial Conference Order (ECF No. 186) in February of 2023.

**V. Inadmissible Evidence -**

In January 2023, in compliance with the Court's scheduling order (ECF No. 142, pg. 1), the parties exchanged trial exhibits and filed their Trial Exhibit Lists with the Court (ECF Nos. 147, 148, 149). Defendants' original Trial Exhibit List consisted of 88 exhibits.

On November 8, 2023, five days before trial, Defendants produced to Mr. Raya a New Trial Exhibit List, consisting of 27 exhibits (enumerated CL through DL[6]), along with hard copies of each of the new exhibits. (ECF No. 188, pg. 2) Twenty two (22) of the twenty seven (27) new exhibits had never been produced to Mr. Raya or had just been produced within the previous ten days and did not exist within the Defendants' original Trial Exhibit List. Mr. Raya immediately objected to each of the previously undisclosed exhibits (ECF No. 188, pg. 2-4).

---

[6] Defendants' new Trial Exhibits CL through DL were originally enumerated A through AA.

13

Defendants offered at least three separate reasons for their untimeliness and for their failure to meet disclosure requirements:

1. On November 9, 2023, Defendants initially claimed that the 27 new exhibits were not new, but simply taken from the original 88 exhibits in a supposedly innocuous attempt to streamline their defense for trial, stating:

> "A focused effort to streamline the case resulted in an extreme culling down of the number of Defendants' Trial Exhibits from 88 to 27." (ECF No. 187, pg. 1)

However, under direct questioning from the court at trial, Defendants admitted that the new exhibits were disclosed to Mr. Raya for the first time "sometime between October 30 and November 3 [2023]" (ECF No. 195, pg. 125), meaning it would have been impossible for them to be 'culled down' from Defendants' original trial exhibits produced in January 2023.

2. After it was shown at trial that the new Trial Exhibits could not have been culled from the original Trial Exhibits, Defendants' attorney offered the following new explanation:

> "I believe that one of the key witnesses to the case…did a computer search that apparently was not searched before and located these documents", and "they were immediately provided to Mr. Raya." (ECF No. 195, pg. 125)

14

Defendants did not explain what prevented the key witness from performing the computer search earlier in the four years between the filing of the initial complaint in 2019 and the November 2023 trial.

3. Defendants finally offered a third and fourth reason for the untimely disclosures at trial, stating:

> "I think it might have had something to do with… the move of Calbiotech [referencing Calbiotech's physical move in 2016] and then the other company, Erba Manheim [referencing Erba Manheim's purchase of Calbiotech in 2017]. (ECF No. 195, pg. 125-126)

Mr. Raya objected to the new Trial Exhibits in a pre-trial written motion on November 11, 2023 (ECF No. 188). The district court did not respond to Raya's November 11, 2022 pre-trial motion as it was filed only two days before the November 13 trial.

Mr. Raya objected again at trial (ECF No. 195 [Transcript], pg. 124, 127-128, 133, 136-138), stating in part:

> MR. RAYA: "Your Honor, I just want to object to any exhibits that were provided to me in the last two weeks… There's no reason why they waited till the last minute, causing me to really be less prepared for trial because I had to spending the last five days trying to go through all these new exhibits that were just produced" (ECF No. 195, pg. 124), and
> MR. RAYA; "I just want to let the Court know, too, that I also asked for these specific types of documents within my discovery requests, requests for production. I asked for all documents between me and Calbiotech and especially those relating to 401(k), and the defendants declined to produce those. " (ECF No. 195, pg. 133)

15

The district court denied most of Raya's objections at trial when Raya was unable to sufficiently articulate in that moment how the late production prejudiced Mr. Raya. (ECF No. 195 [Transcript], pg. 128-129):

> THE COURT: They all have your name on them, sir. So, I guess, what's the prejudice if you've seen them before?
> MR. RAYA: Well, the prejudice is I just haven't had a chance to review it, yet.
> THE COURT: It's one sentence.
> MR. RAYA: So in this case, yeah. I don't see a prejudice.
> THE COURT: Okay. Then I agree with you, because -- With respect to this exhibit, CV, I'll overrule the objection because I agree with you, Mr. Raya. I don't find any prejudice to you by the late production on the documents.

Mr. Raya objected again in a post-trial motion (ECF No. 201, pg. 3-5). The district court denied, in part, Raya's post-trial motion (ECF No. 206, pg.10-11), stating:

> "[T]o the extent these exhibits were already in Plaintiff's possession during the discovery period and/or are emails and correspondence sent to or from Plaintiff, Plaintiff has not demonstrated prejudice to their admission into evidence and his objections to this evidence is overruled." And
> "By contrast, to the extent the exhibits contain materials that were not provided to Plaintiff during discovery, were not in Plaintiff's possession during discovery, or were not emails and correspondence sent to or from Plaintiff, Plaintiff's objections to the evidence are sustained and the relevant pages of the exhibits are stricken"

16

**The district court's Final Judgment Order (ECF No. 206) relied on the inadmissible exhibits.**

In the district court' Final Judgment Order, under **Section IV Findings of Fact**, starting on page 12, the court explains its findings by relying almost exclusively on Defendants' disputed untimely exhibits.  The district court's findings relied on Defendants' Trial Exhibits CP, CQ, CW, CX, CZ, DA, and DF. (ECF No. 206, pg. 12-18)

## VI.  Counterclaim

The district court granted judgment in favor of Defendants as to their counterclaim for breach of contract regarding the waiver of Raya's ERISA rights.

When determining whether Raya had independent advice from counsel, the court relied on Defendants' late trial exhibit DF (ECF No. 206, pg. 32).  The court found that this factor weighed in favor of finding the waiver to be knowing and voluntary despite the fact that evidence showed that the attorney that Raya called never called him back and failed to reply to Raya's emails. (ECF No. 206, pg. 32) The evidence shows that the Plan Administrator withheld Plan Documents until after Raya executed the waiver. (ECF No. 200, pg. 17)

**ARGUMENT**

17

**I.     The District Court Erred When They Allowed Defendants' Attorney To Interfere With Raya's Document Subpoenas**

**Standard of Review**

The imposition of or refusal to impose discovery sanctions is reviewed for an abuse of discretion.  *Sali v. Corona Reg'l Med. Ctr.*, 884 F.3d 1218, 1221 (9th Cir. 2018)

A district court abuses its discretion if it bases its decision on an erroneous view of the law or on a clearly erroneous assessment of the evidence." Ingenco Holdings, LLC v. Ace Am. Ins. Co., 921 F.3d 803, 808 (9th Cir. 2019)

A party cannot simply object to a subpoena served on a non-party, but rather must move to quash or seek a protective order. *Brown v. Deputy No. 1*, No. 12-CV-1938-GPC BGS, 2014 WL 842946 at *3 (S.D. Cal. Mar. 4, 2014)

----------------------

Mr. Raya issued FRCP Rule 45 document subpoenas on three (3) third party administrators in January 2023. (ECF No. 143, pg. 4)  Defendants' attorney Corey Schechter interfered with Raya's document subpoenas by sending letters to each respondent stating:

> "Please be advised that my clients will be making an objection to this subpoena. …We respectfully request based on our challenging the subpoena that you not produce any documents to the requesting party prior to the challenge hereto being resolved by the Court or the subpoena being withdrawn by the plaintiff." (ECF No. 143, pg. 4-5)

No objection or motion to quash was ever filed by Defendants. The letters apparently worked as two of the three respondents never responded to the subpoenas. (ECF No. 143, pg. 5)

Raya objected to Mr. Schechter's interference (ECF No. 129) and asked the court to sanction Mr. Schechter and asked for leave to resubmit Raya's subpoenas (as discovery had already closed).  Raya cited *Price v. Trans Union, LLC*, 847 F. Supp. 2d 788, 793 (E.D. Pa. 2012) and *Fox Indus., Inc. v. Gurovich*, No. CV-03-5166-TCP-WDW, 2006 WL 2882580.

19

The district court denied Mr. Raya's motion, citing *Lofton v. Verizon Wireless, LLC*, 308 F.R.D. 290 (N.D. Cal. 2015). However, the district court's citation is not appropriate because, in the *Lofton* case, the basis for the argument for sanctions was based solely on the movants *suspicion* that the opposing party advised respondents to object to the subpoenas. The Lofton court declined to order sanctions because:

> "There is simply no evidence that Verizon interfered with the third party subpoenas. To the contrary, Verizon appears to have gone to some effort to have its vendors respond with limited success." *Lofton v. Verizon Wireless, LLC*, 308 F.R.D. 290 (N.D. Cal. 2015)

The record reflects the district court in this case based its decision on a clearly erroneous view of the law and an erroneous assessment of the evidence.

Federal Rules of Civil Procedure rule 45(a)(l)(D) authorizes Mr. Raya to issue a subpoena requiring a non-party to produce electronically stored information or produce other documents. In response, Rule 45 (d)(2)(B) authorizes the subject of the subpoena to object to the production requested, and Rule 45(d)(3) authorizes the opposing party to move to quash or modify the subpoena before having to comply. However, as the *Price* court explains:

> "Nowhere in the Rule is it contemplated that the adversary of the party seeking the information may advise, no matter the reasons, the person commanded by the subpoena to produce the information to ignore the subpoena's command." *Price v. Trans Union, LLC*, 847 F. Supp. 2d 788, 793 (E.D. Pa. 2012)

20

The subpoenas specifically sought Plan Documents that were in effect between 2008 and 2016 from Defendants' third party administrators and actuaries. These Plan Documents are absolutely material to this case since the Defendants are accused of creating back-dated documents that were never part of the original plans.

## Relief

Raya respectfully requests the Court allow Raya to re-issue document subpoenas to respondents.

## II. The District Court Erred When They Dismissed All Of Raya's Pension Plan Claims By Way Of Summary Judgment

### Standard of Review

The Court reviews a "district court's grant of summary judgment de novo, viewing the evidence in the light most favorable to the non-moving party and drawing all reasonable inferences in its favor." *Bell v. Wilmott Storage Servs., LLC*, 12 F.4th 1065, 1068 (9th Cir. 2021).

The Court "will reverse a grant of summary judgment if a rational trier of fact could resolve a genuine issue of material fact in the nonmoving party's favor." *Rivera v. Corrections Corp. of Am.*, 999 F.3d 647, 651 (9th Cir.2021)

-------------------------------------

21

**A. The District Court Erred By Making A Credibility Determination When The Court Relied On Defendant David Barka's Declaration That The Amendment Was Adopted In 2008**

The district court cited Defendant David Barka's declaration as the only evidence that the Amendment is authentic and was adopted in 2008, stating:

> "Defendants have presented evidence that Plaintiff lacks standing to bring a claim under, or on behalf of, the Pension Plan."  (ECF No. 114, pg. 15) and
> "[Defendant] David Barka, Vice President of Calbiotech, and a Trustee of the Pension Plan, states in a sworn Declaration that the 2008 Amendment relied on in this Order is '[a] true and correct copy of the 2008 Amendment to the Pension Plan and was adopted/executed by Calbiotech concurrently with the Adoption Agreement on December 28, 2008.' Plaintiff has not come forward with any evidence that the 2008 Amendment is not authentic or that the dates listed in the 2008 Amendment are false." (ECF No. 114, pg. 6)

Summary judgment was not appropriate because: "witness credibility, a matter particularly within the province of the factfinder, … is clearly at issue, especially in view of the fact that the only evidence submitted is the testimony of the defendant. " *F.D.I.C. v. Jackson*, 133 F.3d 694, 700 (9th Cir. 1998)

**B. The District Court Erred In Holding That Raya Lacked Standing And Erred In Failing To Consider Material Facts**

There is no dispute, meaning the parties and the district court agree, that the plan documents produced in 2018 provide that "all Employees who meet certain minimum [service] requirements are eligible to participate in the Pension Plan,

22

subject to several exceptions not applicable to the facts in this case." (ECF No. 114, pg. 5, 17:20)  However, the district court granted summary judgment for Defendants based on the exclusionary language of the disputed Amendment.

The Court erred in their March 28, 2022 Order (ECF No. 114) by failing to consider material facts, presented in Mr. Raya's Response brief (ECF No. 87) to Defendants' Motion, which create genuine disputes as to whether the Amendment is authentic or whether the dates listed in the Amendment are false or whether the Amendment is backdated.

### Material Fact #1

*The 2008 Amendment does not exist in the original Pension Plan Documents that the Plan Administrator sent to Mr. Raya in a letter on September 19, 2018.* (ECF 87, pg. 2, 19:20) and (ECF No. 64, pg. 5, Exhibit 1)

This material fact is supported by a copy of the Administrator's September 19, 2018 letter to Mr. Raya, and a copy of the Pension Plan Adoption Agreement, plus amendments, that were attached to the letter (ECF No. 64 Exhibit 1).  The letter confirms (using identifying bates numbers) that the Pension Plan Adoption Agreement, along with amendments to the Adoption Agreement, are enclosed with the letter.  This documentary evidence was attached to Raya's SAC as Exhibit 1, and they were attached to Raya's September 2022 Motion for Reconsideration as Exhibit 1. (ECF No. 135 R.Raya Decl. Exhibit 1)

23

**Material Fact #2**

*Calbiotech claims the Amendment was written and executed in 2008, but it contains the name of an employee, Sabreen Najeeb, who was hired in 2011.* (ECF No. 87, pg.2, Exhibit 2)

This material fact is supported by a copy of the Amendment (with Sabreen Najeeb's name in it), and a copy of the Calbiotech Pension Plan Form 5500 tax filing showing Sabreen Najeeb's hire date as March 14, 2011. These documents were attached to Mr. Raya's Response (ECF No. 87) to Defendant's Summary Judgment Motion as Exhibit 2 and they were attached to Raya's September 2022 Motion for Reconsideration as Exhibit 2. (ECF No. 135 R.Raya Decl. Exhibit 2)

Nowhere in the district court's summary judgment Order (ECF No. 114) does the court address these facts.

## C. Defendants Failed To Meet Their Initial Summary Judgment Burden Of Establishing The Absence Of A Genuine Issue Of Material Fact

In their Motion For Partial Summary Judgment, Defendants argue they are entitled to summary judgment:

"…because the Amendment is legally effective as of September 1, 2008, pursuant to 26 CFR § 1.401(a)(4)-11(g)(3)(iii)… and **is legally enforceable for the reasons previously noted by Defendants in their opposition to Plaintiff's first motion for partial summary judgment**." (ECF No. 83, pg.10, 5:15) (emphasis added)

24

Defendants' argument offers no clarification on which 'previously noted reasons' they are referring to. Defendants offer no page numbers or docket numbers that the reader can refer to.

The moving party bears the initial burden of establishing the absence of a genuine issue of material fact. see *Celotex Corp. v. Catrett*, 477 U.S. at 323 (1986).

If the moving party fails to bear the initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159-60, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)

### D. The District Court Erred In Ruling That Raya's Showing That The Controlling Language Of The Pension Basic Plan Document Makes The Amendment Unenforceable Was Untimely

In June 2022, Raya filed the second of three motions for reconsideration (ECF No. 120) regarding the district court's summary judgment order. Raya argued that summary judgment was improper because, even an authentic amendment to the Pension Plan that was properly executed and adopted in 2008, would still be made unenforceable by the controlling language of the plan's Basic Plan Document. (ECF No. 120, pg. 7-9)

25

The Pension Plan is made up of three distinct documents that, together, comprise and govern the Pension Plan: (1) The Summary Plan Description, (2) The Adoption Agreement, and (3) The Basic Plan Document (BPD). (ECF No. 83, SSUF No. 4) The Amendment amends Section 2, page 2, paragraph 2.4 of the Adoption Agreement and does not amend any language in the Basic Plan Document. The Amendment states (ECF No. 120, Exhibit 3):

> NOW THEREFORE, effective as of September 1, 2008, the Employer and Trustee(s) in accordance with the provisions of the Plan pertaining to Amendments thereof hereby amend the Plan as follows:
>
> Eligible Class of Employees
> Section 2, page 2, Paragraph 2.4 shall be amended by adding:
>
> "All of the Employees other than Noori Barka, Evelyn Barka, David Barka, Danny Barka, Ann Barka, Amar Dawood and Sabreen Najeeb are not participants under the Pension Plan…"

However, Article 2, Section 2.1 of the Basic Plan Document states (ECF No. 120, Exhibit 1, pg. 2):

> "An Employee will be eligible to become a Participant in the Plan upon satisfying the eligibility requirements as elected by the Sponsoring Employer in Section 2 of the Adoption Agreement, **subject to** the following provisions:
>
> **All Employees shall be eligible** for participation in the Plan except for the following ineligible classes if elected in Section 2.4 of the Adoption Agreement:
> (a) [Union Employees]
> (b) [Employees through merger]

26

(c) [Non-resident aliens]

In addition, if the Sponsoring Employer uses a Non-Standardized Adoption Agreement,…[Not Applicable]

The controlling language in Section 2.1 of the BPD requires that eligibility requirements within Section 2.4 of the Adoption Agreement comply with the following eligibility provisions: "All employees shall be eligible for participation in the Plan [except for 3 identified classes of employees (1. Union Employees, 2. Employees resulting from a merger, and 3.Non-resident aliens)]".

Section 2.1 of the BPD provides addition rules for Non-Standardized Adoption Agreements, but those additional rules don't apply to the Calbiotech Pension Plan because page 1 of the Adoption Agreement identifies itself as a "Standardized" Adoption Agreement (ECF No. 120, Exhibit 2, pg. 1).

The terms of the Plan require Calbiotech to enforce the Adoption Agreement's original, pre-amendment eligibility rules, described in paragraph 2.4, which state "All employees are eligible employees…" (ECF No. 120, Exhibit 2). Section 10.5 of the Basic Plan Document states:

> "If any Plan provision is held invalid or unenforceable, such invalidity or unenforceability will not affect any other provision of this Plan, and this Plan will be construed and enforced as if such provision had not been included" (ECF No. 120, Exhibit 1, pg. 4)

27

Pursuant to Section 2.1 and Section 10.5 of the Pension Plan Basic Plan Document, the Amendment is made invalid and unenforceable by the plain unambiguous terms of the Plan Documents. Mr. Raya was eligible to participate in the Pension Plan beginning in 2008 or 2009 and has standing to bring claims for benefits and to bring claims on behalf of the Plan in federal district court.

-----------------------

The preceding argument was made to the district court in June 2022 in Raya's second motion for reconsideration (ECF No. 120). The court denied Mr. Raya's motion stating:

> "The Court concludes that Plaintiff has failed to show that the Basic Plan Document was "newly discovered or unknown" to him or that Plaintiff "could not with reasonable diligence have discovered and produced" the Basic Plan document. *Engelhard Indus., Inc. v. Rsch. Instrumental Corp.*, 324 F.2d 347, 352 (9th Cir. 1963)" (ECF No. 127, pg. 6)

This conclusion is not appropriate because nowhere in Raya's motion for reconsideration did Raya contend that the Basic Plan Document itself was 'newly discovered or unknown' to him. Raya only claimed that the language in Section 2 of the BPD and the importance of that language was unknown to him, stating:

> "The Eligibility rules and provisions of Section 2.1 of the Basic Plan Document and the material facts outlined above have not previously been presented to the Court. While exercising reasonable diligence, Mr. Raya did not know of these facts at the time he filed his reply brief…" (ECF No.120, pg. 10)

28

The court's denial order also stated:

> "To the extent that Plaintiff instead seeks reconsideration on the basis that the Court's Summary Judgment Order was manifestly unjust, Plaintiff must demonstrate the existence of an error that is "direct, obvious, and observable."… Reconsideration on the basis of manifest injustice is denied because Plaintiff has failed to demonstrate clear error and his failure to raise his arguments in a timely manner precludes a finding of manifest injustice."

The district court did not comment on the merit of Raya's argument and made no finding on whether or not the Plan Documents would have conferred eligibility on Mr. Raya or other similarly situated individuals if Raya had made his argument earlier in the litigation.

The district court ignores the fact that the plain language of the Plan Documents confers eligibility on Mr. Raya and on all regular employees. The ruling creates a situation where the Plan Administrator now has to administer the Plan in a way that is contrary to the plain language of the plan rules when it comes to Mr. Raya. The ruling creates a situation where the Plan Administrator will now treat identically situated participants differently because the Administrator will not be able to apply Raya's timeliness penalty to other individuals.

The district court penalizes Mr. Raya for not discovering the significance of the controlling language in the Basic Plan Document in a timely manner, but fails to penalize the Plan Administrator for the same failure. The Administrator had a fiduciary responsibility to discover this language in the Plan Documents for years

29

before Raya pointed it out to them. In fact, in the absence of an Order that orders otherwise, the Administrator, even now as he reads this brief, has a fiduciary responsibility to administer the plan according to the plain language of the Plan Documents and to enroll Raya in the Pension Plan as of the date he became eligible in 2008.

------------------------------

Most of these arguments above were raised with the district court in Raya's third motion for reconsideration (ECF No. 135). The court denied Raya's third motion for reconsideration, but the Order (ECF No. 141) did not address Raya's individual arguments. The court ruling denied all of Raya's arguments in one paragraph, stating in part:

> "In issuing the Summary Judgment Order, the Court thoroughly considered the evidence and arguments presented by Plaintiff at that time. The Court again considered Plaintiff's objections on the merits in issuing the Order denying the first Motion for Reconsideration, despite finding that Plaintiff had failed to demonstrate the existence of any newly discovered evidence. Plaintiff had a third opportunity to present additional arguments and evidence in his second Motion for Reconsideration. To the extent that Plaintiff now seeks to relitigate issues previously addressed by the Court, such as the authenticity of the 2008 Amendment, the Court finds that Plaintiff's arguments and evidence fail to demonstrate the existence of any clear error or manifest injustice." (ECF No.141, pg. 8)

The district court's order did not identify any specific place in the record where the court "previously addressed" Raya's arguments.

30

## Relief

Mr. Raya requests the Court reverse the District Court's dismissal of all of Raya's Pension Plan claims. The District Court should find Raya is a participant in the Pension Plan pursuant to the unambiguous terms of the Plan Documents and Raya should be enrolled in the Plan as of 2008, when he became eligible.

**III.** **The District Court Erred When They Refused To Consider The Fact That Defendants Submitted Falsified Evidence Before Trial**

### Standard of Review

If the district court fails to make factual findings, the decision on a motion for sanctions is reviewed de novo. *Fonseca v. Sysco Food Servs. of Arizona, Inc.*, 374 F.3d 840, 846 (9th Cir. 2004)

The imposition of or refusal to impose discovery sanctions is reviewed for an abuse of discretion. *Sali v. Corona Reg'l Med. Ctr.*, 884 F.3d 1218, 1221 (9th Cir. 2018)

A district court abuses its discretion if it bases its decision on an erroneous view of the law or on a clearly erroneous assessment of the evidence. *Ingenco Holdings, LLC v. Ace Am. Ins. Co.*, 921 F.3d 803, 808 (9th Cir. 2019)

--------------------------------------------

31

On January 20, 2023, Defendants produced a falsified version of the 2016 401(k) Adoption Agreement to Plaintiff and identified this falsified document as one of their Trial Exhibit AK. (ECF No. 154, pg. 6-7).

A date on the Plans execution has been altered and is different than the date that appears on the same document within the Administrative Record. The date has been changed to support Defendants' contention that the 2016 401(k) Plan AA does not identify the prior plan in effect to be the 2011 Plan. The relevant portions of the authentic document (as it appears in the Administrative Record) and the fabricated document (as it appears in Defendants' Original Trial Exhibit AK) are shown below:

**Correct 2016 Adoption Agreement From Administrative Record**

401(k) Profit Sharing
estated: 9-1-2011

**Fabricated 2016 Adoption Agreement In Defendants' Original Exhibit AK**

401(k) Profit Sharing
estated: 9-1-2008

A closer look at the altered date in Defendants' Exhibit AK (above right) shows that the new date of "9-1-2008" was placed over the original date of "9-1-2011", but did not completely cover the original date, and the very bottom of each

number in the original date can still be observed in between the new date and the line just below it

There is no issue as to whether or not the document was falsified. In their brief addressing this issue (ECF No. 161), Defendants do not deny that someone changed the date. Defendant Calbiotech, who is the Plan Administrator and custodian of this document states: "Neither Defendants nor their counsel are entirely certain why two copies of this document exist with different dates written…" and "Defendants respectfully submit this discrepancy to be a harmless error". (ECF No. 161, pg. 4)

There is no issue as to whether Defendants and their attorneys included the falsified document in their final trial exhibits to be used at trial, as Defendants do not deny this either. Defendants claim it was merely an "oversight". (ECF No. 161, pg. 3)

After Raya requested the district court sanction Defendants and their attorneys for possessing and submitting falsified evidence, the court declined to consider it stating:

> "Deferring consideration of any request for sanctions based on Defendants' alleged falsification or misrepresentation of plan documents until after the trial of this action will allow the Court to rule on a more fully developed evidentiary record, promote judicial economy, and better facilitate adjudication of this action on the merits. *Cf. Cunningham v. Hamilton County*, 527 U.S. 198, 205-06 (1999)." (ECF No. 164, pg.5)

33

The district court's citation of the *Cf. Cunningham v. Hamilton County* case is an erroneous application of law because the *Cunningham* decision applies only to appellate courts and cannot be used as a reason for a district court not to examine its own falsified evidence.

It would be an abuse of discretion not to impose significant sanctions for such an egregious act or, at best, for such egregious negligence

### Relief

Raya seeks remand to the district court in order to have a proper hearing on why and how Defendants came in to possession of falsified material documents and on why and how those documents found their way in to Defendants' Trial Exhibits.

**IV.** **The District Court Erred By Allowing The Defense To Raise A Waived Or Forfeited Defense At Trial And By Relying On That Waived Or Forfeited Defense In Their Final Judgment**

### Standard of Review

Whether an affirmative defense is waived is a question of law reviewed de novo. *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 713 (9th Cir. 2001)

-------------------------

At the November 2023 trial, Defendants raised the defense that Raya was terminated for performance reasons (ECF No. 206, pg. 25), despite the fact that Defendants failed to articulate that defense in their Answer (ECF No. 115) or in the

34

final Pretrial Conference Order (ECF No. 186) or in any motion throughout the years long litigation.

Defendants raised this defense to the court for the first time in their Memorandum of Contentions of Fact and Law on January 21, 2023 (ECF No. 147, pg. 23), over six years after Raya's termination in 2016 and over three years after Raya filed his complaint in 2019 and one year after the close of discovery in January 2022. Raya immediately objected to this defense and Defendants subsequently omitted the disputed defense two weeks later from the Proposed Final Pretrial Conference Order lodged with the court in February of 2023, causing Raya to reasonably believe that Defendants had abandoned this forfeited defense.

At trial, Defendants raised the defense that Raya was terminated due to "the quality of work, the inconsistency, the missing meetings, the not showing up, going late, leaving at will, aggressive behavior, disagreements, causing interactions in the company." (ECF No. 195 pg. 175)

However,

"[P]arties have a duty to advance any and all theories in the pretrial order" *El-Hakem v. BJY Inc.,* 415 F.3d 1068, 1077 (9th Cir. 2005)

A party may not "offer evidence or advance theories at the trial which are not included in the [pretrial] order or which contradict its terms." *United States v. First Nat'l Bank of Circle*, 652 F.2d 882, 886 (9th Cir. 1981)

35

Raya is prejudiced by this last second defense because he had no opportunity to discover or prepare evidence showing there was never a change in Raya's quality of work, or his attendance, or his behavior prior to his termination, and no opportunity to subpoena witnesses that could attest to that fact. The district court relied on the forfeited defense in their final ruling, stating:

> "David Barka credibly testified at trial that he decided to terminate Plaintiff's employment with Calbiotech due to Plaintiff's "disruptive behavior" between July 2016 and November 2016." and
> "The Court finds that David Barka's testimony about the reasons for terminating Plaintiff's employment was credible and accurately state Calbiotech's reasons for Plaintiff's termination." (ECF No. 206, pg. 25)

Raya objected to the waived defense at trial (ECF No. 195, pg. 120,121) and Raya objected to the waived defense in a written motion after trial. (ECF No. 201, pg. 2-3)

The District Court denied Raya's objections, stating in part:

> "Defendant's Answer to the SAC, … states as affirmative defenses that [1] 'Defendants acted in good faith at all times during the relevant period' and
> [2]'Defendants' actions with regard to Plaintiff were at all times conducted in good faith and without fraud, oppression, or malice towards Plaintiff and his legal rights.'" (ECF No. 115 at 14, 16.) and

> "With this language, Defendants' Answer "sufficiently put plaintiff on notice that [Defendants] intend to argue that his termination was not motivated by any discriminatory reason." *Sarkis v. Yolo Cnty. Pub. Agency Risk Mgmt. Ins. Auth.*, WL 4864857, at *2 (E.D. Cal. July 31, 2023)"  (ECF No. 206, pg. 8)

The district court's comparison to the *Sarkis* case is inappropriate because, in the *Sarkis* case the affirmative defense used was clear and specific, stating:

> "[A]ny employment action taken against him was based on a proper, business-related reason which was neither discriminatory, arbitrary, capricious, nor unlawful under law, regulation, or public policy" (2:21-cv-01097, ECF No 38 at 5)

The two affirmative defenses cited by the District Court above are generic boiler plate defenses that could be applied to any or all of the dozen or so claims in the SAC and could not possibly "sufficiently put plaintiff on notice that [Defendants] intend to argue that his termination was not motivated by any discriminatory reason".

**Relief**

Mr. Raya requests this Court reverse the District Court's August 13, 2024 judgment and grant a new trial.

Alternatively the Court should reverse and remand with instructions for the District Court to issue a new judgment based only on defenses and issues raised in Defendants Answer and possibly based on new Rule 52 motions for findings and conclusions filed by both parties.

**V.    The District Court Erred By Admitting Inadmissible Evidence At Trial And By Relying On That Evidence In Their Final Judgment Order**

**Standard of Review**

Evidentiary rulings are reviewed for an abuse of discretion. *Clare v. Clare*, 982 F.3d 1199, 1201 (9th Cir. 2020)

The court "must actually exercise its discretion" rather than simply ignore the evidence or reject it *sub silentio.  Brown v. Roe,* 279 F.3d 742, 744 (9th Cir.2002)

------------------------

On November 8, 2023, five days before trial, and almost two years after the close of discovery in January 2022, Defendants introduced 27 new Trial Exhibits, labeled CL through DL.  At trial, Defendants admitted that the new exhibits failed to meet disclosure requirements (ECF No. 195 [Transcript], pg. 126):

> THE COURT: So do you concede these were responsive to requests, to earlier discovery requests, or requests for what you intended to use in your case? So they should have been produced earlier
>
> MR. MILOVE: I believe so.  .

The district court relied almost exclusively on exhibits CP, CQ, CW, CX, CZ and DF to support the court's Findings of Fact in their final judgment (ECF No. 206, pg. 12-18).

However, according to the admitted exhibit list filed by the district court, Exhibits CP, CQ, and portions of CZ were never admitted into evidence (ECF No. 194, pg. 25-26, 28).  These exhibits cannot be relied upon by law.

38

Exhibits CP, CQ, CW, CX, and CZ are responsive to Raya's Requests For Production (Plaintiff's Trial Exhibit 7) that were propounded to Defendant Calbiotech during discovery and should have produce by the close of discovery in January 2022. Raya's RFPs asked :

**REQUEST FOR PRODUCTION NO. 19:**
Please produce all email communications between CALBIOTECH and Robert Raya's Calbiotech email account between 2008 and 2016, (Plaintiff's Trial Exhibit 7, pg. 5) and

**REQUEST FOR PRODUCTION NO. 23:**
Please produce all Documents (including, but not limited to, CALBIOTECH internal emails and messages, communication records, notes, meeting minutes) relating to the decision to terminate Robert Raya from CALBIOTECH in 2016. (Plaintiff's Trial Exhibit 7, pg. 5)

Defendants failed to produce the documents contained in their late exhibits that were responsive to these RFPs.

Each of these late exhibits are in blatant and egregious violation of the Federal Rules of Evidence and disclosure rules and the districts court's Scheduling Order, which clearly states that the parties' disclosure deadlines were not to be modified except for good cause. (ECF No. 142, ¶9)

Defendants offered several different explanations for their extremely late productions, none of which can be considered "good cause". Defendants' first excuse that their new exhibits were not actually new, but simply culled down from

39

their original exhibit list was proven to be false at trial, when Defense attorney Mr. Milove admitted that the exhibits were first produce to Mr. Raya in the two weeks before trial:

> THE COURT: That wasn't my question, though. So when were they produced first? Tell me when they were produced first.
>
> MR. MILOVE: Sometime between October 30th and November 3rd, Your Honor.
>
> THE COURT: Of 2023?
>
> MR. MILOVE: Yes, sir. (ECF No. 195, pg. 125)

The fact that Defendants initially misrepresented the timing of production of these exhibits should be enough to make them inadmissible.

The second excuse, that an employee witness (who was conveniently unavailable to testify due to illness) just recently discovered the documents after searching a computer that had not been searched before (ECF No. 195, pg. 125), is highly improbable and extremely weak. This excuse does not explain why this computer was not searched years earlier, during the discovery period. This excuse is implausible because all other emails and documents relevant to this case were stored on servers and available through Calbiotech's intranet.

40

The third excuse, that Calbiotech's physical move in 2016 contributed to the documents being lost (ECF No. 195, 125-126), is implausible because electronic documents and emails, which are stored on multiple servers, do not get lost during a physical move. It's not plausible that some, but not all emails between 2016 and 2019 would be lost, and then recovered again two weeks before trial.

The prejudice to Mr. Raya is compounded because Defendants' late exhibits were all used to support Defendants' forfeited last minute defense that Raya was terminated for performance reasons. If this defense was legitimate and if this evidence was legitimate, there should have been no reason to withhold them until the last second.

The late production prevented Raya from providing his own evidence showing that the late documents were taken out of context, or based on hearsay, or simply not authentic. Raya was prevented from bringing witnesses to attest to the fact that there were no changes in Raya's performance or behavior between July and November of 2016 and that the only thing that had changed was the fact that Raya had requested Plan Documents.

41

**Waiver was not Knowing and Voluntary**

When determining whether Raya's waiver of his ERISA rights was knowing and voluntary, the district court relied on exhibit DF (ECF No. 206, pg. 32)

When determining whether Raya "had independent advice, such as that of counsel", the district court improperly conflated getting' independent advice' with Raya having "an awareness of his potential claim".

When determining whether Raya had independent advice from counsel, the court found that this factor weighed in favor of finding the waiver knowing and voluntary despite the fact that evidence showed that the attorney that Raya called never called him back and failed to reply to Raya's email. (ECF No. 206, pg. 32; Defendants' Trial Exhibit DF at 231)

## Relief

Mr. Raya requests this Court reverse the District Court's August 13, 2024 judgment and grant a new trial in which only admissible evidence is admitted. Alternatively the Court should reverse and remand with instructions for the District Court to issue a new judgment based only on admissible evidence and possibly based on new Rule 52 motions for findings and conclusions filed by both parties.

## CONCLUSION

For the foregoing reasons, the district court's final judgment for all claims and the counterclaim should be reversed, and the case remanded for a new trial based only on defenses articulated within Defendants' Answer and based only on admissible evidence.

The district court should grant Raya leave to re-issue subpoenas to respondents who failed to produce documents after receiving Defendants' interfering letters.

The district court should hold a hearing to determine how and why Defendants came in to possession of falsified material documents and on why and how those documents found their way in to Defendants' Trial Exhibits.

The summary judgment dismissal of Raya's Pension Plan claims should be reversed and Raya's Pension Plan claims should be considered on the merits. Alternatively, Raya should be ruled a participant in the Pension Plan pursuant to the plain unambiguous terms of the Plan Documents and Raya should be enrolled as of the time he became eligible in 2008.

Date: July 2, 2025

_s/ Robert Raya_
Robert Raya, Plaintiff/Appellant
In pro se

43

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* *http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** _____25-2394_____

I am the attorney or self-represented party.

**This brief contains** ____10,014 ___ **words,** including ____10___ words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[X] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties.
    [ ] a party or parties are filing a single brief in response to multiple briefs.
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** _s/Robert Raya_____ **Date** ____July 2, 2025_____
*(use "s/[typed name]" to sign electronically-filed documents)*