No. 25-2394

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

ROBERT RAYA,

*Plaintiff/Appellant*,

v.

CALBIOTECH, INC.; DAVID BARKA; NOORI BARKA; EVELYN BARKA; CALBIOTECH, INC. 401(k) PROFIT SHARING PLAN; CALBIOTECH INC. PENSION PLAN,

*Defendants/Appellees*.

On Appeal from the United States District Court
for the Southern District of California
No. 3:19-cv-02295-WQH-AHG
Hon. William Q. Hayes

**APPELLEES' ANSWERING BRIEF**

Marc S. Schechter, Esq., Bar No. 116190
Corey F. Schechter, Esq., Bar No. 279964
Paul D. Woodard, Esq. Bar No. 282470
SCHECHTER BENEFITS LAW GROUP LLP
13025 Danielson Street, Suite 260
Poway, California 92064
Telephone: (858)444-2300
Facsimile: (858)444-2345
Attorneys for Defendants-Appellees
CALBIOTECH, INC.; DAVID BARKA; NOORI BARKA; EVELYN BARKA;
CALBIOTECH, INC. 401(k) PROFIT SHARING PLAN; and CALBIOTECH
INC. PENSION PLAN,

{00494048.DOCX / 3}

# TABLE OF CONTENTS

I.    INTRODUCTION ...................................................................................... 1

II.    STATEMENT OF JURISDICTION ................................................... 1

III.    ISSUES PRESENTED ....................................................................... 2

IV.    STATEMENT OF THE CASE ......................................................... 2

V.    SUMMARY OF ARGUMENT ......................................................... 4

VI.    ARGUMENT ...................................................................................... 5

    A.    The District Court Did Not Err or Abuse Its Discretion When It Denied Appellant's Motion for Sanctions and Denied His Requested Relief Regarding Non-Party Subpoenas. ............................................... 5

    B.    The District Court Did Not Err When Dismissing Appellant's Claims Relative to the Pension Plan on Summary Judgment, Nor Did It Abuse Its Discretion When Denying Appellant's Several Motions for Reconsideration in Connection Therewith. ........................................... 9

        1.    The District Court Did Not Err When Relying on David's Declaration in a Summary Judgment Motion. ........................... 11

        2.    The District Court Did Not Fail to Consider All Facts Presented to It When Issuing the 3/28/2022 MSJ Order, Nor Did It Abuse Its Discretion in Denying Any of Appellant's Three Motions for Reconsideration Concerning the Rulings in the 3/28/2022 MSJ Order ........................................................................... 14

        3.    Appellees Satisfied Their Burden of Establishing the Absence of Any Genuine Issue of Material Fact on Summary Judgment. ........................................................................... 20

        4.    The District Court Did Not Abuse Its Discretion When Denying Appellant's Second Motion for Reconsideration of the 3/28/2022 MSJ Order. ................................................. 22

    C.    The District Court Did Not Abuse Its Discretion in Refusing to Impose Sanctions Prior to Trial Relative to the Plan Document Dates Discrepancy. ....................................................... 26

D.     The District Court Did Not Err in Allowing Any of Appellees' Defenses Asserted at Trial; Appellees Did Not "Waive" or "Forfeit" Any of Their Defenses. ...................................................................31

E.     The District Court Did Not Admit Any Inadmissible Evidence at Trial, Nor Did It Rely on Any Inadmissible (or Otherwise Stricken) Evidence in Issuing the OFT. .............................................................38

VII.   CONCLUSION.......................................................................................49

# TABLE OF AUTHORITIES

**Cases**

*Acosta v. Brain*,
910 F.3d 502, 512 (9th Cir. 2018) ........................................................................32

*Coastal Transfer Co. v. Toyota Motor Sales, U.S.A., Inc.*,
833 F.2d 208, 212 (9th Cir. 1987) ........................................................................25

*Cunningham v. Hamilton County*,
527 U.S. 198, 205-06 (1999) ........................................................................ 27, 28

*Engelhard Indus., Inc. v. Rsch. Instrumental Corp.*,
324 F.2d 347, 352 (9th Cir. 1963) ........................................................................25

*F.D.I.C. v. Jackson*,
133 F.3d 694, 700 (9th Cir. 1998) ........................................................................13

*Gen. Elec. Co. v. Joiner*,
522 U.S. 136, 141-42 (1997) ........................................................................39

*Healy Tibbitts Construction Co. v. Ins. Co. of N.A.*,
679 F.2d 803 (9th Cir. 1982)........................................................................33

*Holgate v. Baldwin*,
425 F.3d 671, 675 (9th Cir. 2005) ........................................................................27

*In re Aircrash in Bali*,
871 F.2d 812, 816 (9th Cir. 1989) ........................................................................39

*In re Gayle Sterten*,
546 F.3d 278, 285 (3d Cir. 2008)........................................................................33

*Ingenco Holdings L.L.C. v. ACE Am. Ins. Co.*,
921 F.3d 803, 808-09 (9th Cir. 2019) ........................................................................5, 27

*Kona Enters., Inc. v. Estate of Bishop*,
229 F.3d 877, 890 (9th Cir. 2000) ........................................................................23

*Lam v. City of Los Banos*,
976 F.3d 986, 1005 (9th Cir. 2020........................................................................39

*Laniok v. Advisory Comm.*,
935 F.2d 1360, 1368 (2d Cir. 1991)........................................................................45

*Ledo Fin. Corp. v. Summers*,
122 F.3d 825, 827 (9th Cir. 1997) ........................................................................33

*Lofton v. Verizon Wireless (VAW) L.L.C.*, 308 F.R.D. 276, 290 (N.D. Cal. 2015)
........................................................................ 6, 7, 8

*Marchand v. Mercy Med. Ctr.*,
  22 F.3d 933, 936 (9th Cir. 1994)...................................................................5, 27

*McCollough v. Johnson, Rodenburg & Lauinger, LLC*,
  637 F.3d 939, 953 (9th Cir. 2011)...................................................................39

*Morais v. Cent. Beverage Corp. Union Emps.' Supplemental Ret. Plan*,
  167 F.3d 709, 713 n.6 (1st Cir. 1999)..............................................................45

*Navajo Nation v. Norris*,
  331 F.3d 1041, 1046 (9th Cir. 2003) ...............................................................22

*Peterson v. United States*,
  694 F.2d 943, 945 (3d Cir. 1982)......................................................................10

*R & R Sails, Inc. v. Ins. Co. of the Pa.*,
  673 F.3d 1240, 1245 (9th Cir. 2012) .............................................................5, 26

*Ritter v. Hughes Aircraft Co.*,
  58 F.3d 454, 457 (9th Cir. 1995)......................................................................32

*Rivera v. Anaya*,
  726 F.2d 564, 566 (9th Cir. 1984) ....................................................................33

*Sarkis v. Yolo Cnty. Pub. Agency Risk Mgmt. Ins. Auth.*,
  No. 2:21cv1097-TLN-JDP, 2023 WL 4864857, at *2 (E.D. Cal. July 31, 2023)
  ..........................................................................................................................34

*Sch. Dist. No. 1J v. ACandS, Inc.*,
  5 F.3d 1255, 1258 (9th Cir. 1993) ...............................................9, 11, 12, 22, 23

*Simmons v. Navajo County*,
  609 F.3d 1011, 1023 (9th Cir. 2010)..................................................................33

*Thomas v. Or. Fruit Prods. Co.*,
  228 F.3d 991, 997 (9th Cir. 2000) .....................................................................14

*United States v. Caudle*,
  48 F.3d 433, 435 (9th Cir. 1995)........................................................................41

*Weeks v. Bayer*,
  246 F.3d 1231, 1236 (9th Cir. 2001) ..................................................................23

*Wyshak v. City Nat'l Bank*,
  607 F.2d 824, 827 (9th Cir. 1979) ......................................................................33

**Statutes**

29 U.S.C. § 1104(a)(1)...........................................................................................3
29 U.S.C. § 1132(a)(1)(B)......................................................................................3

29 U.S.C. § 1132(a)(2) ...................................................................................3

29 U.S.C. § 1132(a)(3) ........................................................................ 3, 4, 37

29 U.S.C. § 1140 ............................................................................. 4, 35, 36

## Other Authorities

*Black's Law Dictionary* (8th ed. 2004) ..................................................24

## Rules

Fed. R. Civ. P. 56 ..........................................................................................13

Fed. R. Civ. P. 56(e) ....................................................................................11

Federal Rule of Civil Procedure 37 ........................................................30

## Regulations

26 C.F.R. §§ 1.401(a)(4)-11(g)(3)(iii) ......................................................23

## REPRESENTATION STATEMENT

Defendants-Appellees Calbiotech, Inc.; David Barka; Noori Barka; Evelyn Barka; Calbiotech, Inc. 401(k) Profit Sharing Plan; Calbiotech Inc. and Pension Plan are represented by Marc S. Schechter, Corey F. Schechter, and Paul D. Woodard of Schechter Benefits Law Group LLP, 13025 Danielson Street, Suite 260, Poway, California 92064.

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rules of Appellate Procedure, Rule 26.1, Defendants and Appellees DAVID BARKA; NOORI BARKA; EVELYN BARKA; CALBIOTECH, INC.; CALBIOTECH, INC. 401(k) PROFIT SHARING PLAN; and CALBIOTECH, INC. PENSION PLAN (collectively "Appellees") hereby make the following disclosure. Appellees have no parent corporation. No publicly-held corporation owns 10 percent or more of Appellees' stock.

Dated: September 1, 2025          SCHECHTER BENEFITS LAW GROUP LLP

By: /s/ Corey F. Schechter
MARC S. SCHECHTER
COREY F. SCHECHTER
13025 Danielson Street, Suite 260
Poway, CA 92064
Attorneys for Defendants-Appellees

{00494048.DOCX / 3}

## I.   INTRODUCTION

This appeal stems from more than five years of extensive litigation initiated by Plaintiff-Appellant despite his prior release of claims against Defendants-Appellees. Plaintiff-Appellant has failed to demonstrate any reversible error or abuse of discretion by the District Court in any of its rulings, and Defendants-Appellees respectfully request this Court affirm the decisions below.

## II.   STATEMENT OF JURISDICTION

This is an appeal by Plaintiff-Appellant ("Appellant") of the following decisions issued by the United States District Court for the Southern District of California in *Raya v. Barka, et al., Case No. 3:19-cv-2295-WQH-AHG*: (*i*) 2022 U.S. Dist. LEXIS 56167, 2022 WL 901557 (S.D. Cal. Mar. 28, 2022) ("3/28/2022 MSJ Order") [1SER0058-0094], (*ii*)[1] 2022 U.S. Dist. LEXIS 231387, 2022 WL 17905528 (S.D. Cal. Dec. 23, 2022) ("Order Denying Sanctions" or "ODS") [1SER0044-0057], and (*iii*) 2024 U.S. Dist. LEXIS 226582, 2024 WL 5102517

---

[1] Appellees will cite their Supplemental Excerpts of Record ("**SER**") by indicating within brackets the Supplemental Excerpts with the volume number preceding and the page number(s) following "SER" (e.g., "[1SER005, 037-039]"). To further assist the Court in locating the particular portions being cited, Appellees will further add paragraph ("¶"), section ("§"), page-line number (e.g., "3SER005:12-14"), and/or footnote ("n.") references, where appropriate.

(S.D. Cal. Aug. 13, 2024) ("Order Following Trial" or "OFT") [1SER0002-0043].[2]

This Court therefore has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.[3]

## III.    ISSUES PRESENTED

1.    Whether the District Court committed any error or abused its discretion in the manners alleged by Appellant when rendering any of its decisions from which he appeals.

2.    Whether, if the District Court committed any error or abused its discretion in the manners alleged by Appellant when rendering any of its decisions from which he appeals, any such decisions should be reversed by this Court.

3.    Whether, if the District Court committed any error or abused its discretion in the manners alleged by Appellant when rendering any of its decisions from which he appeals and any such decision is reversible by this Court, Appellant's requested relief is appropriate under the circumstances.

## IV.    STATEMENT OF THE CASE

Appellant originally filed this action on December 2, 2019. Following several motions to dismiss Appellant's complaint and leave to amend such being afforded Appellant, the resulting operative complaint for Appellant was his Second Amended Complaint ("SAC") filed September 8, 2021, alleging four causes of action under

---

[2] *See* Appellant's Notice of Appeal, filed April 6, 2025 [9SER2061-2062].
[3] The complete trial court docket sheet is located at 9SER2063-2079.

the Employee Retirement Income Security Act of 1974, as amended [29 U.S.C. § 1001, *et seq*.][4] ("ERISA"), those being:

**(1)** claims for benefits under both the Calbiotech, Inc. Pension Plan ("Pension Plan") and the Calbiotech, Inc. 401(k) Profit Sharing Plan ("401(k) Plan") (collectively, "Plans") pursuant to 29 U.S.C. § 1132(a)(1)(B) against (*i*) Calbiotech, Inc. ("Company"), as plan administrator of the Plans, (*ii*) the Pension Plan, and (*iii*) the 401(k) Plan;

**(2)** claim for breach of fiduciary duty pursuant to 29 U.S.C. § 1132(a)(2) for alleged violations of 29 U.S.C. § 1104(a)(1) against (*i*) David Barka ("David"), (*ii*) Noori Barka ("Noori"), (*iii*) Evelyn Barka ("Evelyn"), and (*iv*) Company;

**(3)** claim for breach of fiduciary duty pursuant to 29 U.S.C. § 1132(a)(3) for alleged violations of 29 U.S.C. § 1104(a)(1) against (*i*) David, (*ii*) Noori, (*iii*) Evelyn, and (*iv*) Company; and

**(4)** claim for retaliation (i.e., wrongful termination) pursuant to 29 U.S.C. § 1132(a)(3) for alleged violation of 29 U.S.C. § 1140 against (*i*) David, (*ii*) Noori, and (*iii*) Company.

Over time, each of Appellant's claims asserted in his SAC would be adjudicated in favor of Appellees—some via orders on motions for summary

---

[4] All section references herein shall be to Title 29 of the United States Code unless otherwise indicated.

judgment [1SER0058-0094; 5SER0888-0905[5]], and the remaining claims via judgment following a two-day bench trial [1SER0002-0043].[6]

Appellees filed a counterclaim against Appellant for breach of contract in their responsive pleadings [9SER2009-2032; 6SER1043-1069], also resulting in a judgment in their favor on that counterclaim following the aforesaid bench trial [1SER0002-0043].[7]

Appellant thereafter filed a motion to amend the findings and alter or amend the judgment, which was denied in a subsequent order [2SER0096-0112].

This appeal followed.[8]

## V.  SUMMARY OF ARGUMENT

Appellant's arguments that the District Court erred or abused its discretion in its decisions from which he appeals are unavailing. The District Court's decisions should be affirmed by this Court.

---

[5] Although not an order identified by Appellant from which he is appealing in his Notice of Appeal, the District Court disposed of certain portions of certain of Appellant's claims, and entirely disposed of his third cause of action, in an order on Appellees' final motion for summary judgment [5SER0888-0905].

[6] A Final Pretrial Order was adopted by the District Court in advance of the bench trial. [4SER0637-0659.]

[7] A transcript of the two-day bench trial was created: (1) 3SER0219-0447 (Day 1); and (2) 2SER0119-0217 (Day 2).

[8] Appellant's Opening Brief is cited herein as "OB."

## VI.   ARGUMENT

For consistency, Appellees will address each of Appellant's arguments in their sequence raised in his OB.

**A.     The District Court Did Not Err or Abuse Its Discretion When It Denied Appellant's Motion for Sanctions and Denied His Requested Relief Regarding Non-Party Subpoenas.**

This Court noted the applicable standard of review in *Ingenco Holdings L.L.C. v. ACE Am. Ins. Co.*, 921 F.3d 803, 808-09 (9th Cir. 2019):

> Discovery rulings, including the imposition of discovery sanctions, are reviewed for abuse of discretion. *R & R Sails, Inc. v. Ins. Co. of the Pa.*, 673 F.3d 1240, 1245 (9th Cir. 2012) . A district court abuses its discretion if it bases its decision "on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Holgate v. Baldwin*, 425 F.3d 671, 675 (9th Cir. 2005) ; *Marchand v. Mercy Med. Ctr.*, 22 F.3d 933, 936 (9th Cir. 1994).

Appellant appeals the District Court's decision in the ODS wherein, following due consideration of the facts and the parties' positions, it refused to impose sanctions requested by Appellant against Appellees and their counsel and, by virtue thereof, further refused to grant Appellant's request within his motion for "leave … to resubmit subpoenas to Respondents."

Appellant took issue below with certain actions of Appellees' counsel occurring after the close of discovery with respect to third-party subpoenas issued by Appellant with commanded production dates also subsequent to discovery cutoff. Appellant contends that, in denying his request for sanctions relative to those actions,

among the multitude of legal authorities cited by the District Court upon which it based its ultimate decision that "[Appellees] did not act in bad faith to interfere with [Appellant's] third party subpoenas" [1SER0051:9-10], the District Court cited legal authority—in particular, *Lofton v. Verizon Wireless (VAW) L.L.C.*, 308 F.R.D. 276, 290 (N.D. Cal. 2015)—which was allegedly "not appropriate" in Appellant's opinion (*see* OB at 20). Appellant is mistaken.

The facts relevant to this dispute, as well as the bases for the District Court's decision, are succinctly stated in the ODS, particularly at Section B thereof. [1SER0047-0051:1-15.] However, simply stated, following the discovery cutoff, Appellees' counsel sent letters to each of the non-party subpoena recipients informing them of Appellees' intent to challenge the subpoenas and merely *requested* (but in no way *instructed*) that they not produce to Appellant any documents in response to the subpoena until the challenge was resolved. [See, *e.g.*, 5SER0987-0989.]

The District Court thereafter held a discovery conference regarding the dispute, and as noted by the District Court, "[n]o further action was taken by [Appellees] regarding the subpoenas [following the discovery conference and the District Court's subsequent issuance of its tentative rulings and guidance] since the deadline for completion of fact discovery had passed, and [Appellant] never moved to extend the … fact discovery cutoff." [1SER0048:10-21.]

{00494048.DOCX / 3}                                    6

As noted above, in reaching its decision that "[Appellees] did not act in bad faith to interfere with [Appellant's] third-party subpoenas" [1SER0051:9-10], the District Court at one point in its discussion cited *Lofton*, 308 F.R.D. at 290, noting that the *Lofton* court "declined to sanction party for interfering with third party subpoenas where 'the vendor was "*informed*" of Verizon's objections to the discovery sought. [] But this cannot be read to be evidence that Verizon *instructed* this vendor, nor any other, to move to quash the subpoena or otherwise not respond.'" [1SER0051:11-14 (emphasis in both ODS and *Lofton*).]

Appellant now argues, "[t]he record reflects the district court … based its decision on a clearly erroneous view of the law and an erroneous assessment of the evidence," insofar as "the district court's citation [to *Lofton*] is not appropriate because, in the *Lofton* case, the basis for the argument for sanctions was based solely on the movants *suspicion* that the opposing party advised respondents to object to the subpoenas." *See*, OB at 20 (emphasis in original). However, Appellant's argument is based on a flawed reading of *Lofton*, and he inaccurately synonymizes "informed" (as used in *Lofton*) with "suspicion" (found nowhere in *Lofton*). Appellant alone draws the conclusion there was no knowledge, but only suspicion, by the vendors in *Lofton* of Verizon's objections to the discovery sought. This is incorrect. However, even were it true, Appellant misses the overarching point of the District Court's citation to *Lofton* based on the facts of the instant action; that point

being: Verizon in *Lofton*, like Appellees here, never *instructed* any subpoena recipient to not respond to the subpoena. While the District Court's citation to, and any reliance on, *Lofton* was appropriate in assisting to reach its well-reasoned decision, it was all the legal authorities cited in the aggregate, and not merely one minor citation cherry-picked by Appellant from among the many, which led to such decision.

Moreover, Appellant's requested relief in his OB that he be allowed "to re-issue document subpoenas to recipients" (*see* OB at 21) would not place him in any different position than that in which he currently sits. Appellant states that "[t]he subpoenas specifically sought Plan Documents that were in effect between 2008 and 2016 from Defendants' third party administrators and actuaries. These Plan Documents are absolutely material to the case …" (*See Id.*  ). However, as noted by the District Court and conceded to by Appellant, at least one of the three subpoena recipients—Principal—did in fact respond to the subpoena. In his subpoena sent to Principal, Appellant commanded production of, inter alia, the following: (a) "[t]rue and  correct copies of any and all Calbiotech, Inc. 401(k) Profit Sharing Plan Summary Plan Descriptions, Adoption Agreements, or Basic Plan Documents that were in effect at any time between 2008 and 2017;" and (b) "[t]rue and correct copies of any and all … Pension Plan Summary Plan Descriptions, Adoption Agreements, or Basic Plan Documents that were in effect at any time between 2008 and 2017."

[5SER0981-0986, *particularly* 5SER0984 ¶2-3.] Appellant has thus already obtained that which he asserts is so germane to this case and now seeks to obtain duplicates thereof through his requested relief on appeal, thus making the requested relief inappropriate under the circumstances even were there a finding by this Court that the District Court did somehow err in its decision-making.

Based on the foregoing, the District Court did not base its decision on either an erroneous view of the law or a clearly erroneous assessment of the evidence, and thus neither erred nor abused its discretion in denying Appellant his requested sanctions or relief. Moreover, his requested relief on appeal is inappropriate under the circumstances. The District Court's decision should therefore be affirmed.

**B.  The District Court Did Not Err When Dismissing Appellant's Claims Relative to the Pension Plan on Summary Judgment, Nor Did It Abuse Its Discretion When Denying Appellant's Several Motions for Reconsideration in Connection Therewith.**

The following applicable standard of review was provided by this Court in

*Sch. Dist. No. 1J v. ACandS, Inc.*, 5 F.3d 1255, 1258 (9th Cir. 1993):

> A grant of summary judgment is reviewed *de novo* to determine, viewing the evidence in the light most favorable to the nonmoving party, whether there exist any genuine issues of material fact and whether the district court applied the relevant substantive law. (*Id.* at 1258

> Fed. R. Civ. P. 56(e) requires that documents relied upon in an affidavit presented in a summary judgment motion or opposition thereto be attached to the affidavit. (*Id.* R. 1261.

Evidentiary questions, although decided in the context of summary judgment, are reviewed for abuse of discretion. … *see Peterson v. United States*, 694 F.2d 943, 945 (3d Cir. 1982) (failure to attach key document to affidavit violated Rule 56(e) and made summary judgment improper) (.) (Id.)

…

Summary judgment is not precluded simply because there is a dispute of some facts in a case. To defeat a motion for summary judgment, the nonmoving party must present facts in support of the issues on which it would bear the burden of proof at trial, there must be probative evidence of those facts, and the facts must be uncontroverted or at least create a *genuine* issue of material fact. … ("If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."…). When "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" (*Id*. at 1264 (emphasis in original; internal citations omitted).)

The District Court granted Appellees' motion for summary judgment on Appellant's Pension Plan-related claims via the 3/28/2022 MSJ Order. [1SER0058-0094.] Appellant thereafter filed three separate motions for reconsideration concerning the 3/28/2022 MSJ Order. The District Court denied each. [5SER0996-1004, 0990-0995, and 0909-0917.]

Appellant now submits four arguments that the District Court's decision in the 3/28/2022 MSJ Order dismissing his claims related to the Pension Plan should be reversed.[9] Each is addressed below.

###### 1.  The District Court Did Not Err When Relying on David's Declaration in a Summary Judgment Motion.

Appellant takes issue with the District Court "cit[ing] … David['s] … declaration as the only evidence that the [2008] Amendment is authentic and was adopted in 2008." In so doing, Appellant appears to argue that no district court may rely on facts stated in a witness declaration submitted or referenced in support of a motion for summary judgment. He is mistaken. Were such the case, no district court could ever grant a motion for summary judgment—a result clearly not contemplated or intended by the Federal Rules of Civil Procedure.

Contrary to Appellant's apparent contention, Fed. R. Civ. P. 56 provides in pertinent part:

---

[9] Although Appellant appears to argue the District Court erred when denying his several motions for reconsideration concerning the 3/28/2022 MSJ Order, Appellant does not directly appeal from any of those three orders denying those motions for reconsideration [5SER0996-1004, 0990-0995, and 0909-0917]. However, in the Ninth Circuit, a "review of a denial of a motion for reconsideration is for abuse of discretion." *Sch. Dist. No. 1J*, 5 F.3d at 1262. Moreover, "failure to file documents in an original motion or opposition does not turn the late filed documents into 'newly discovered evidence.' … (materials available at time of filing opposition to summary judgment would not be considered with motion for reconsideration); … (evidence available to party before it filed its opposition was not 'newly discovered evidence' warranting reconsideration of summary judgment)." *Id.*, at 1263 (internal citations omitted).

(a)    Motion for Summary Judgment or Partial Summary Judgment. A party may move for summary judgment, identifying each claim or defense — or the part of each claim or defense — on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

…

(c)    Procedures.

…

(4)    *Affidavits or Declarations.* An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

David's declaration [6SER1125-1128, *particularly* ¶¶1 – 3 and 9], which the District Court considered when issuing the 3/28/2022 MSJ Order, satisfied all necessary procedural requirements; to wit, it was (i) used to support or oppose a motion for summary judgment or partial summary judgment; (ii) made on David's own personal knowledge; (iii) set out facts that would be admissible in evidence; and (iv) showed that David is competent to testify on the matters stated.

Moreover, the "2008 Amendment relied on in [the 3/28/2022 MSJ Order]" [1SER0063 at n.2] was attached as an exhibit [6SER1129-1130] to David's declaration and was thus a document appropriately relied upon by the District Court when issuing the 3/28/2022 MSJ Order. *See Sch. Dist. No. 1J*, 5 F.3d at 1261 (supra).

Additionally, Appellant himself notably submitted, *as an "Undisputed Fact" in support of his own motion for summary judgment* (which was also adjudicated within the 3/28/2022 MSJ Order wherein the District Court found the 2008 Amendment to be authentic and further finding, "[Appellant] has not come forward with any evidence that the 2008 Amendment is not authentic or that the dates listed in the 2008 Amendment are false" [1SER0063 at n.2]), that "Calbiotech adopted/executed an Amendment to the Pension Plan on December 28, and made it effective as of Sep 1, 2008" and cited in support thereof both the 2008 Amendment itself and David's declaration attesting to such fact. [9SER2005 at ¶8.] Appellant therefore previously concurred and attested to the 2008 Amendment's authenticity.

Finally, Appellant's entire argument is misplaced because the District Court did not make a "credibility determination" in the manner alleged; rather, it simply relied on the declaration at issue and the evidence submitted in support thereof, then correctly noted that "Plaintiff has not come forward with any evidence that the 2008 Amendment is not authentic or that the dates listed in the 2008 Amendment are false." [1SER0063 at n.2.] Despite Appellant's misapplication of the law stated in *F.D.I.C. v. Jackson*, 133 F.3d 694, 700 (9th Cir. 1998), as cited by him in his OB, it is nonetheless worth noting here that the District Court's OFT is replete with affirmative findings that David is a "credible" witness. [*See*, *e.g.*, 1SER0026:6-23, 0028:3-17, and 0040:12-13.] Moreover, in ERISA cases such as this, where the

ERISA claims such as those adjudicated and disposed of in the 3/28/2022 MSJ Order would be tried in the District Court in a bench trial, the District Court is in such instance "the factfinder." See, District Court's order striking Appellant's demand for jury trial ("There is no right to a jury trial on the remaining ERISA claims. *See Thomas v. Or. Fruit Prods. Co.*, 228 F.3d 991, 997 (9th Cir. 2000) . .... The request to strike the demand for a jury trial is granted.") [9SER2054:14-17.]

Based on the foregoing, the District Court did not err when relying on David's declaration in ruling on a summary judgment motion.

<blockquote>

2.    <u>The District Court Did Not Fail to Consider All Facts Presented to It When Issuing the 3/28/2022 MSJ Order, Nor Did It Abuse Its Discretion in Denying Any of Appellant's Three Motions for Reconsideration Concerning the Rulings in the 3/28/2022 MSJ Order</u>

</blockquote>

Appellant argues the District Court failed to consider certain facts which he purports to be "material" and further asserts a "genuine" dispute as to whether the 2008 Amendment to the Pension Plan is authentic.

At the outset, when presenting such "facts" to the District Court for purposes of opposing Appellees' motion for summary judgment in relation to the 3/28/2022 MSJ Order, Appellant framed them not as an attack on the "authenticity" of the 2008 Amendment, but rather as an attack on their legal "validity" or "enforceability" insofar as he claims the 2008 Amendment, by its very terms, violated the law. [6SER1085-1086:16-3.]

As previously mentioned, Appellant himself notably submitted, *as an "Undisputed Fact" in support of his own motion for summary judgment* (which was also adjudicated in favor of Appellees within the 3/28/2022 MSJ Order wherein the District Court found the 2008 Amendment to be authentic and further finding, "[Appellant] has not come forward with any evidence that the 2008 Amendment is not authentic or that the dates listed in the 2008 Amendment are false"), that "Calbiotech adopted/executed an Amendment to the Pension Plan on December 28, and made it effective as of Sep 1, 2008," citing in support thereof both the (i) 2008 Amendment and (ii) declaration of David attesting to such fact. [9SER2005 at ¶8.] Appellant therefore previously asserted, as an undisputed material fact, the 2008 Amendment's authenticity.

When denying Appellant's third motion for reconsideration, wherein he made these near identical arguments, albeit now with variations to those same two alleged "Material Facts" (based on prior arguments clearly refuting those "facts" as previously presented by Appellant to the District Court) which he alleges the District Court failed to consider, the District Court observed the following:

> In issuing the [3/28/2022 MSJ] Order, the Court thoroughly considered the evidence and arguments presented by Plaintiff at that time. *The Court **again considered** Plaintiff's objections **on the merits** in issuing the Order denying the first Motion for Reconsideration, despite finding that Plaintiff had failed to demonstrate the existence of any newly discovered evidence*. Plaintiff had a third opportunity to present additional arguments and

evidence in his second Motion for Reconsideration. *To the extent that **Plaintiff now seeks to relitigate issues previously addressed by the Court, such as the authenticity of the 2008 Amendment**, the Court finds that **Plaintiff's arguments and evidence fail to demonstrate the existence of any clear error or manifest injustice**.*

[5SER0916:6-14 (emphases added).]

a.    Alleged "Material Fact #1":

As stated to the District Court in his third motion for reconsideration of the 3/28/2022 MSJ Order, "[t]he 2008 Amendment does not exist in the original *complete* Pension Plan Documents that the Plan Administrator sent to [Appellant] on September 19, 2018." [5SER0927:10-11 (emphasis added).]

However, when put forth to this Court in his OB, Appellant instead phrases it as: "[t]he 2008 Amendment does not exist in the original Pension Plan Documents that the Plan Administrator sent to [Appellant] in a letter on September 19, 2018." See, OB at *23. Of note is the omission of the word "complete" when presented to this Court versus the District Court. The reason for Appellant's omission to this Court is obvious upon a reading of the District Court's findings and conclusions reached when expressly addressing the contention on the merits in connection with Appellant's first motion for reconsideration of the 3/28/2022 MSJ Order (*infra*).

Appellant unfortunately neglects in his OB to mention that in the first of his three motions for reconsideration filed by him with respect to the findings and conclusions in the 3/28/2022 MSJ Order, he argued at Section IV.C. thereof that

"[t]he 2008 Amendment does not appear in Complete Pension Plan documents produced by the Administrator prior to 2019" to advance his theory that the 2008 Amendment is not authentic. [6SER1042:4-5.] When considering such argument *on its merits*, the District Court noted in its order denying that motion for reconsideration:

> [Appellant] further contends that the fact that the 2008 Amendment was not produced by [Appellees] in 2018 as part of the production of "all Plan Documents" is evidence that it is backdated. … In connection with [Appellees'] production of Pension Plan documents in 2018, [Appellees] repeatedly represented that only "certain documents" were being produced. … [Appellant] acknowledged in his deposition that he was never told that he would receive a "complete" set of plan documents in 2018. ... The 2008 Amendment was produced to [Appellant] on January 2, 2019. … In the absence of evidence that [Appellees] had an obligation to produce the 2008 Amendment or represented that they were producing "all" Pension Plan documents in 2018, [Appellees'] non-production of the 2008 Amendment in 2018 does not support the assertion that the 2008 Amendment is backdated. Reconsideration on the basis that the 2008 Amendment was not produced in 2018 is denied.

[5SER1003:1-15.]

b.      Alleged "Material Fact #2":

As stated to the District Court in his third motion for reconsideration of the 3/28/2022 MSJ Order, "Calbiotech claims the [2008 Amendment] was written and executed in 2008, but it contains the name of an employee (Sabreen Najeeb) who

was *unknown to the Company before* she was hired for the first time in *2011*." [5SER0929:2-4 (emphasis added).]

However, when put forth to this Court in his OB, Appellant instead phrases it as: "Calbiotech claims the [2008] Amendment was written and executed in 2008, but it contains the name of an employee, Sabreen Najeeb, who was hired in 2011." See, OB at *24. Of note is the omission of the contention that Ms. Najeeb was unknown to the Company in 2008 (or at any time prior to 2011) when presented to this Court versus the District Court. The reason for Appellant's deviation is apparent upon a reading of the 3/28/2022 MSJ Order, wherein the District Court indeed addressed this argument as presented by Appellant in his opposition to Appellees' motion for summary judgment (*infra*).[10]

When addressing such contention in the 3/28/2022 MSJ Order, the District Court properly noted, "the 2008 Amendment does not purport to confer participant status on any individual or otherwise supersede the eligibility requirements of the

---

[10] In his opposition to Appellees' original motion for summary judgment, Appellant asserted, in support of his contention that "[t]he 2008 Amendment shows signs of backdating," that "Calbiotech claims the [2008 Amendment] was written and executed in 2008, but it contains the name of an employee who was unknown to the company before she was hired for the first time in 2011." [6SER1085:25-27.] However, as previously noted, Appellant's opposition to Appellees' original motion for summary judgment did not necessarily attack the authenticity of the 2008 Amendment on this point, but rather its legal "validity" or "enforceability" (see, 6SER1085:16-17 ("[Appellant] has offered facts and evidence in support of his [Pension Plan] participation status and in support of the fact that the 2008 Amendment is void and unenforceable.")).

[Pension Plan's] Adoption Agreement." [1SER0069:3-5.] This was in line with Appellees' contention in Appellees' reply brief filed in response to Appellant's opposition brief in support of their original summary judgment motion wherein they noted, "[Appellant] fails to provide any evidentiary support that the 2008 Amendment 'contains the name of an employee who was *unknown* to the company before she was hired for the first time in 2011.' (Emphasis added.)" [6SER1072:22-24.] Simply put, the date of Ms. Najeeb's hire—even if after the Company's adoption of the 2008 Amendment in 2008—is immaterial to the question of the 2008 Amendment's authenticity, validity, and enforceability, and proves neither that she was "unknown" to the Company prior to 2011 as asserted by Appellant, nor that the 2008 Amendment is "backdated" because, even if Ms. Najeeb was hired by the Company subsequent to its adoption of the 2008 Amendment in December 2008, the Pension Plan does not eliminate or preclude the possibility of naming prospective future employees who *may* be hired by the Company at some point in the future and who *may* become eligible to participate in the Pension Plan upon their satisfaction of its eligibility requirements.

Based on the foregoing, the District Court did indeed previously consider these contentions by Appellant and, following adequate consideration thereof, rejected them on their merits. In so doing, the District Court did not fail to appropriately consider any statement of fact submitted to it by Appellant, nor did the

District Court abuse its discretion when denying any of Appellant's motions for reconsideration.

          3.        <u>Appellees Satisfied Their Burden of Establishing the Absence of Any Genuine Issue of Material Fact on Summary Judgment.</u>

Appellant seemingly contends Appellees failed to meet their burden on summary judgment in establishing the absence of a genuine issue of material fact relative to Appellant's claims related to the Pension Plan because their summary judgment "argument offers no clarification on which 'previously noted reasons' they are referring to," and they "offer no page numbers or docket numbers that the reader can refer to." See, OB at *25.

Notably, Appellant made no such argument below when opposing Appellant's motion for summary judgment with respect to the language used by Appellees to which he cites and *now* takes issue with for the first time on appeal. The reason for the absence of any such argument by Appellant at any previous time is obvious—i.e., it was written by Appellees in a manner reasonably calculated to be understood by Appellant and the District Court.

Contrary to Appellant's apparent contention that the language used by Appellees was indecipherable, the language used by Appellees in their conclusionary paragraph which Appellant now takes issue with is clear and unambiguous when read *in totum* insofar as it expressly identifies the document-

filing to which they are referring in this action, and further does not provide any limitation on "the reasons" being referenced in such identified document-filing:

> Because none of the material facts upon which [Appellant]'s ineligibility for participation or accrual of pension benefits under the Pension Plan can be disputed, and because the Amendment is legally effective as of September 1, 2008, pursuant to 26 C.F.R. §§ 1.401(a)(4)-11(g)(3)(iii) as noted above, ***and*** is legally enforceable for *the reasons* previously noted by [Appellees] *in their opposition to [Appellant]'s first motion for partial summary judgment*, [Appellees] respectfully request the Court enter partial summary judgment in their favor upon [Appellant]'s claim for benefits under the Pension Plan.

[6SER1103:3-10 (emphases added).]

Also of note, "the reasons" being referenced for the legal validity and enforceability of the 2008 Amendment were themselves addressed at length in the referenced document-filing (i.e., those reasons had already been articulated by Appellees to the District Court and to Appellant for purposes of opposing his first motion for partial summary judgment – also ruled upon by the District Court in the 3/28/2022 MSJ Order – in which he argued, unsuccessfully, that the 2008 Amendment was invalid and unenforceable by law as his proffered basis for why the District Court should have granted summary judgment in his favor on his Pension Plan-related claims). Thus, the language, "… and is legally enforceable for the reasons previously noted by [Appellees] in their opposition to [Appellant]'s first motion for partial summary judgment," as used by Appellees, and which Appellant

now takes issue with for the first time on appeal, could be appropriately described under the circumstances as *gratis dictum*[11] by Appellees within their summary judgment motion, filed subsequent to Appellant's first partial summary judgment motion referenced therein by Appellees.

Based on the foregoing, Appellees did not fail to satisfy their burden of establishing the absence of a genuine issue of material fact on summary judgment, nor did the District Court err in so finding.

> 4.    The District Court Did Not Abuse Its Discretion When Denying Appellant's Second Motion for Reconsideration of the 3/28/2022 MSJ Order.

Appellant takes issue with the District Court's order denying his second of three motions for reconsideration of the 3/28/2022 MSJ Order. [5SER0990-0995.]

"Whether or not to grant reconsideration is committed to the sound discretion of the court." *Navajo Nation v. Norris*, 331 F.3d 1041, 1046 (9th Cir. 2003). This Court therefore reviews a district court's decision to deny a motion for reconsideration for abuse of discretion. *See Sch. Dist. No. 1J*, 5 F.3d at 1262 (supra). "Reconsideration is appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *Id.* at 1263.

---

[11] "A voluntary statement; an assertion that a person makes without being obligated to do so." *See Black's Law Dictionary* (8th ed. 2004).

Reconsideration is "an extraordinary remedy, to be used sparingly in the interest of finality and conservation of judicial resources." *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000) (quotation omitted). A motion for reconsideration "may *not* be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." *Id*. A motion for reconsideration is likewise not a vehicle for relitigating issues that have been previously adjudicated. *See Weeks v. Bayer*, 246 F.3d 1231, 1236 (9th Cir. 2001) (stating that granting a party a "second bite at the apple" is "not the purpose of Rule 59").

Moreover, "failure to file documents in an original motion or opposition does not turn the late filed documents into 'newly discovered evidence.' … (materials available at time of filing opposition to summary judgment would not be considered with motion for reconsideration); … (evidence available to party before it filed its opposition was not 'newly discovered evidence' warranting reconsideration of summary judgment)." *Sch. Dist. No. 1J*, 5 F.3d at 1263 (internal citations omitted).

Thus, a district court does not abuse its discretion in denying a motion for reconsideration when the evidence or arguments could have been presented earlier with reasonable diligence.

Appellant argues that the District Court erred in denying his second (and apparently also his third) motion for the reconsideration. Appellant faults the District

Court, and seemingly charges it with an abuse of discretion, in its refusal to grant reconsideration arising from new arguments raised by Appellant based on evidence which had been in his possession long before the filing of the moving and opposing papers in connection with the several motions for summary judgment and oral arguments on those motions which ultimately resulted in the District Court's issuance of the 3/28/2022 MSJ Order that Appellant sought reconsideration of multiple times over.

Setting aside the erroneous nature of the new arguments raised by Appellant in his motion for reconsideration, the District Court did not abuse its discretion when denying that motion.

Appellant concedes that the evidence (i.e., the cited Basic Plan document for Pension Plan) upon which he based his new arguments in his second motion for reconsideration was not "newly discovered or unknown" to him, and instead argues the *contents* of the evidence were allegedly "newly discovered or unknown" to him. This is a distinction without a difference; and, in any event, his contention is unsupported by the record because he had cited the same evidence in several previous filings.

As the District Court observed in denying that second motion for reconsideration of the 3/28/2022 MSJ Order:

> [Appellees] present evidence that [Appellant] had access to the Basic Plan document on February 5, 2019,

more than two years prior to the hearing that resulted in the challenged Summary Judgment Order. (*See* ECF No. 117-1 ¶¶ 5-6). Further, the record reflects that [Appellant] attached portions of the Basic Plan as an exhibit to a brief filed on September 15, 2021 (*see* ECF No. 74-5), and specifically cited Section 10.5 of the Basic Plan—one of the provisions [Appellant] now asserts constitutes new evidence—on January 11, 2022 (ECF No. 92-1 at 4-5). The Court heard oral argument on the Summary Judgment Order on February 17, 2022, and provided [Appellant] another opportunity for his arguments to be heard on the merits in considering [Appellant]'s first Motion for Reconsideration. The Court concludes that [Appellant] has failed to show that the Basic Plan document was "newly discovered or unknown" to him or that [Appellant] "could not with reasonable diligence have discovered and produced" the Basic Plan document. *Engelhard Indus., Inc. v. Rsch. Instrumental Corp.*, 324 F.2d 347, 352 (9th Cir. 1963); *see also Coastal Transfer Co. v. Toyota Motor Sales, U.S.A., Inc.*, 833 F.2d 208, 212 (9th Cir. 1987) (same).

To the extent that [Appellant] instead seeks reconsideration on the basis that the Court's Summary Judgment Order was manifestly unjust, [Appellant] must demonstrate the existence of an error that is "direct, obvious, and observable." *Raya v. Calbiotech*, No. 18-cv-2643-WQH-AHG, 2019 WL 11504688, at *3 (Nov. 26, 2019) (quotation omitted). Reconsideration on the basis of manifest injustice is denied because [Appellant] has failed to demonstrate clear error and his failure to raise his arguments in a timely manner precludes a finding of manifest injustice. *See id.* at *3-4 (collecting cases for the proposition that there is no manifest injustice when a party could have avoided the resulting prejudice through the exercise of due diligence).

[5SER0994-0995:27-21.]

Based on the foregoing, the District Court's decision to deny Appellant's second motion for reconsideration (or any of his other motions for reconsideration) of the 3/28/2022 MSJ Order does not remotely arise to an abuse of the District Court's discretion. Its findings and conclusions that the evidence relied upon by Appellant did not constitute evidence "newly discovered or unknown" to him, and that there was no manifest injustice committed by it when issuing the 3/28/2022 MSJ Order based on all the evidence and arguments then before it, are well-supported.

In conclusion of this entire Section VI.B., the District Court did not err when dismissing Appellant's claims relative to the Pension Plan in the 3/28/2022 MSJ Order, nor did it abuse its discretion in denying any of Appellant's motions for reconsideration of the 3/28/2022 MSJ Order. Appellant's requested relief is therefore inappropriate under the circumstances. The District Court's decision in the 3/28/2022 MSJ Order to dismiss Appellant's claims relative to the Pension Plan should thus be affirmed.

### C. The District Court Did Not Abuse Its Discretion in Refusing to Impose Sanctions Prior to Trial Relative to the Plan Document Dates Discrepancy.

As previously mentioned:

> Discovery rulings, including the imposition of discovery sanctions, are reviewed for abuse of discretion. *R & R Sails, Inc. v. Ins. Co. of Pennsylvania*, 673 F.3d 1240, 1245 (9th Cir. 2012) . A district court abuses its discretion if it bases its decision "on an erroneous view of the law or on a clearly erroneous assessment of the evidence."

> *Holgate v. Baldwin*, 425 F.3d 671, 675 (9th Cir. 2005); *Marchand v. Mercy Med. Ctr.*, 22 F.3d 933, 936 (9th Cir. 1994).

*Ingenco Holdings LLC*, 921 F.3d at 808-809.

Appellant takes issue with the District Court's finding, made pursuant to its inherent authority, that "[d]eferring consideration of any request for sanctions based on [Appellees]' alleged falsification or misrepresentation of plan documents until after the trial of this action will allow the Court to rule on a more fully developed evidentiary record, promote judicial economy, and better facilitate adjudication of this action on the merits." [4SER0664:8-12.] In particular, Appellant attacks the District Court's "*Cf.*" citation immediately thereafter to "*Cunningham v. Hamilton County*, 527 U.S. 198, 205-06 (1999) (declining to permit the interlocutory appeal of sanctions orders under Federal Rule of Civil Procedure 37 because such orders 'often will be inextricably intertwined with the merits of the action')" [4SER0664:12-15], arguing that "the district court's citation of the *Cf. Cunningham v. Hamilton County* case is an erroneous application of the law because the *Cunningham* decision applies only to appellate court's …." *See* OB at *34. Appellant entirely misses the point of the District Court's citation to *Cunningham*. The comparison citation ("*cf*") to *Cunningham* was made by the District Court because it had previously noted in that same order—indeed, within that *same paragraph*—that:

> [I]n this case, the issue of whether [Appellees] falsified or misrepresented various plan documents is inextricably intertwined with the merits of [Appellant]'s claims. (*See*, *e.g.*, Second Amended Complaint, ECF No. 64 ¶¶ 73, 84 (alleging [Appellees] breached their fiduciary duties when they "introduced an invalid, backdated, and fraudulent document in 2019, describing an illegal amendment to the Pension Plan," and disguised the retaliatory nature of [Appellant]'s termination by providing [Appellant] with a "fraudulent" summary plan description).) These claims have been subject to substantial litigation on the merits and the remaining claims are set for trial in August 2023.

[4SER0663-0664:26-5.]

Thus, the District Court's "*Cf.*" citation to the *Cunningham* decision was entirely accurate and appropriate under the circumstances.

Moreover, this particular issue concerning the date discrepancy on the documents was an area of extensive examination and discussion during the trial, taking up nearly 30 pages of the Trial Transcript. [*See* 2SER0122-0149:22-17, *particularly* 2SER0135-0149:20-17.] Once a more fully developed evidentiary record was obtained on this matter, as needed, the District Court made the following relevant factual findings:

> Plaintiff has identified anomalies with Calbiotech's 401(k) Plan documents, which he contends demonstrates that the 2015 Summary Plan Description and other documents were fraudulent. During his trial testimony, David Barka credibly testified that he did not know the reason for two apparently identical documents having different dates, and his "best guess" was that it was "a typo" in documents prepared by Calbiotech's then-new third-party administrator, Dianne Simmons with Crown Benefits.

(Trial Trans. at 247.) David Barka credibly testified that he believed Simmons "corrected her own mistake in the file after accumulating the documents in the [third-party administrator] file that she was taking over [from Calbiotech's prior third-party administrator]." *Id*. at 253. The evidence showed that during this time period the following events were occurring: Simmons was taking over duties as third-party administrator; Simmons was diagnosed with cancer and began undergoing treatment; Calbiotech was in the process of moving to from a 9,000-square-foot facility in Spring Valley, California, to a 24,000-square-foot facility in El Cajon, California; and Calbiotech was undergoing a due diligence investigation related to the sale of the company. David Barka credibly testified that some combination of these circumstances led to the failure of Calbiotech to discover the "typo" until this litigation. David Barka also credibly testified that he was not aware that the administrative record provided by Calbiotech to Plaintiff during litigation was not complete and accurate. After considering all of the evidence presented, the Court finds that Plaintiff has failed to prove that any individual Defendant or employee or agent of Calbiotech intentionally attempted to mislead Plaintiff or conceal the existence of a claim against any Defendant.

[1SER0028:1-21.]

Lastly, Appellees wish to note that they themselves take issue with the terminology used by Appellant in his OB, as it entirely misrepresents the facts as established within the evidentiary record. First, setting aside entirely the misnomer of "falsified evidence" applied by Appellant in reference to the "corrected" date on the document in question, Appellant incorrectly and inappropriately labels these two documents within his OB (at *32) as "Correct 2016 Adoption Agreement" and "Fabricated 2016 Adoption Agreement," when he should instead label them as

"*Original* 2016 Adoption Agreement" and "*Corrected* 2016 Adoption Agreement," respectively. Second, Appellant entirely neglects to mention that after the date discrepancy on the document was brought to Appellees' attention, they replaced the "corrected" version with the "original" version within their trial exhibits intended to be used by them at trial. In addition, Appellees take issue with Appellant's contention that "[t]he date has been changed to support Defendants' contention that the 2016 401(k) Plan AA does not identify the prior plan in effect to be the 2011 Plan." See, OB at *32. Such contention by Appellant is not supported by the evidentiary record; and the alleged "contention" which Appellant inaccurately and inappropriately attributes to Appellees within his own contention is entirely misplaced and not a contention of Appellees whatsoever because the question posed on the 401(k) Plan's amended and restated 2016 Adoption Agreement, for which the date was corrected to reflect "9-1-2008" rather than "9-1-2011," is a fill-in-the-blank requesting: "The original effective date of the plan(s) being restated: _____." [8SER1631-1683, *particularly* 8SER1682.] The *original* effective date of the 401(k) Plan which was being restated via this particular Adoption Agreement is September 1, 2008. [1SER0063:3-5.] Thus, the correction was clearly made by the scrivener of the document in order to correct their error in the drafting and to accurately reflect that *original* effective date of the 401(k) Plan – i.e., "9-1-2008" – which was being restated via this particular Adoption Agreement. In no way does the corrected date

attempt to "not identify the prior plan in effect to be the 2011 Plan" as Appellant asserts to be the intent of the correction; rather, it merely identifies correctly the *original* effective date of the 401(k) Plan, as was being asked by that fill-in-the-blank question, and makes no mention of (or change to) the identification of the effective date of any restated version(s) of the 401(k) Plan adopted by the Company subsequent to that *original* version made effective September 1, 2008.

Based on the foregoing, the District Court acted appropriately when denying without prejudice Appellant's motion for sanctions and deferring consideration of any request for sanctions relative to Appellant's allegations of "falsified evidence" until after trial where a more fully developed evidentiary record was obtained.[12] Moreover, Appellant's requested relief is entirely inappropriate, particularly in light of the fact that the District Court heard testimony at length on the very issues which Appellant now requests "a proper hearing on." *See*, OB at *34. The District Court's decision should thus be affirmed.

### D. The District Court Did Not Err in Allowing Any of Appellees' Defenses Asserted at Trial; Appellees Did Not "Waive" or "Forfeit" Any of Their Defenses.

As an initial matter, Appellees believe Appellant applies an erroneous standard of review in his OB since Appellees' defense that Appellant was terminated

---

[12] Appellant never renewed his motion for sanctions relative to his allegations of "falsified evidence" at any time following the conclusion of the trial.

from employment with the Company for legitimate and non-discriminatory reasons is not believed by them to be an "affirmative defense" per se but rather is a rebuttal to the plaintiff's prima facie case.

This Court held in *Ritter v. Hughes Aircraft Co.*, 58 F.3d 454, 457 (9th Cir. 1995), that the *McDonnell Douglas* presumptions and shifting burdens of production are equally appropriate in the context of discriminatory discharge cases brought under § 510 of ERISA [29 U.S.C. § 1140]." Under that framework:

> [A] plaintiff must first establish a *prima facie* case of discrimination. If the plaintiff establishes a *prima facie* case, the burden then shifts to the defendant to articulate a legitimate nondiscriminatory reason for its employment decision. Then, in order to prevail, the plaintiff must demonstrate that the employer's alleged reason for the adverse employment decision is a pretext for another motive which is discriminatory.

*Id*. at 456-457.[13]

However, regardless of whether the allegedly waived defense at issue is one which is "affirmative" or "rebuttal," the standard of review in this Circuit appears to be for an abuse of discretion; and regardless of the reviewing standard by this Court, the District Court committed neither any error nor any abuse of discretion in

---

[13] To establish their *prima facie* case under § 1140, "[a plaintiff] must show that: (1) [plaintiff] engaged in an activity protected under ERISA; (2) [plaintiff] suffered an adverse employment action; and (3) there is a causal link between the protected activity and the adverse employment action." *Acosta v. Brain*, 910 F.3d 502, 512 (9th Cir. 2018) (quotation omitted).

allowing Appellees to assert this defense in question at trial, of which Appellant had long been made aware. This Court noted the following in *Simmons v. Navajo County*, 609 F.3d 1011, 1023 (9th Cir. 2010) (*revs'd on other grounds*):

> The key to determining the sufficiency of pleading an affirmative defense is whether it gives plaintiff fair notice of the defense." *Wyshak v. City Nat'l Bank*, 607 F.2d 824, 827 (9th Cir. 1979); *see also In re Gayle Sterten*, 546 F.3d 278, 285 (3d Cir. 2008) (noting that "the proper focus of our inquiry" is whether framing the defense as a denial of an allegation "specifically deprived [the plaintiff] of an opportunity to rebut that defense or to alter her litigation strategy accordingly"). Although Rule 8 requires affirmative defenses to be included in responsive pleadings, absent prejudice to the plaintiff, the district court has discretion to allow a defendant to plead an affirmative defense in a subsequent motion. *See Ledo Fin. Corp. v. Summers*, 122 F.3d 825, 827 (9th Cir. 1997); *see also Rivera v. Anaya*, 726 F.2d 564, 566 (9th Cir. 1984) (noting that "[o]ur circuit liberalized the requirement that affirmative defenses be raised in a defendant's initial pleading in Healy Tibbitts Construction Co. v. Ins. Co. of N.A., 679 F.2d 803 (9th Cir. 1982)").

Despite Appellant's unfounded assertion that he was somehow blindsided and "prejudiced" by this alleged "last second defense" (*see* OB at 40), the District Court went through a painstaking and lengthy analysis in its OFT wherein it addressed Appellant's contentions on this very issue and appropriately found to the contrary:

> Claim 4 of the SAC alleges that Calbiotech and David Barka terminated Plaintiff's employment in an attempt to interfere with Plaintiff's ERISA rights in violation of 29 U.S.C. § 1132(a)(3). Defendant's Answer to the SAC, which was filed on April 11, 2022, denies all allegations with respect to Claim 4 and states as

affirmative defenses that "Defendants acted in good faith at all times during the relevant period" and "Defendants' actions with regard to Plaintiff were at all times conducted in good faith and without fraud, oppression, or malice towards Plaintiff and his legal rights." (ECF No. 115 at 14, 16.) [6SER1056, 1058.[14]] With this language, Defendants' Answer "sufficiently put plaintiff on notice that [Defendants] intend to argue that his termination was not motivated by any discriminatory reason." *Sarkis v. Yolo Cnty. Pub. Agency Risk Mgmt. Ins. Auth.*, No. 2:21cv1097-TLN-JDP, 2023 WL 4864857, at *2 (E.D. Cal. July 31, 2023).

Two months prior to the filing the operative Answer to the SAC, Defendants responded to Plaintiff's interrogatory asking for "the reason for Plaintiff Robert Raya's termination from Calbiotech in 2016" by stating: "Performance issues." (Pl.'s Trial Ex. 4 at 12.) [4SER0460:1-12.] This placed Plaintiff on notice that Defendants intended to argue that Defendants terminated Plaintiff's employment because of Plaintiff's poor performance.

Moreover, on February 22, 2022, Defendants deposed Plaintiff and questioned him at length about emails and documentary evidence that Defendants contend show Plaintiff's poor job performance in the months prior to his termination. (*See* Pl.'s Trial Ex. 25 at 205-23.) [4SER0552-0570.] Specifically, Plaintiff was questioned and shown exhibits tending to show that Plaintiff missed management meetings, had unexcused absences from work, failed to timely respond to customer inquiries, and had a conflict with a fellow manager. During this deposition, Plaintiff disputed many of the conclusions that Defendants sought to draw from this evidence, but it further placed Plaintiff on notice of the precise "performance issues" Defendants would contend led to

---

[14] For the Court's ease of reference, SER citations to the document cites by the District Court within its analysis have been added herein.

Plaintiff's firing, as well as the documentary evidence Defendant would use to support their contention at trial. Moreover, Plaintiff designated his deposition transcript as one of his trial exhibits, which further indicates that Plaintiff was aware these issues would be raised at trial.

Eleven months after Plaintiff's deposition, on January 20, 2023, Defendants filed a Memorandum of Contentions of Fact and Law, which states in relevant part:

> In the years and months leading up to Raya's termination of employment from Calbiotech, he displayed increasingly erratic and unprofessional behavior. His exceedingly poor performance in his assigned tasks and his failure to timely respond (and sometimes the failure to respond at all) to important inquiries of Calbiotech clients, his perpetual tardiness and unexcused/unauthorized absences from work during normal working hours, and his harassing/threatening conduct towards his co-workers was the sole basis for his termination from employment at Calbiotech. Raya's termination of employment from Calbiotech was in no way connected to his requests for any benefit plan-related documents.
>
> . . .
>
> There exists no causal connection between Raya's requests for plan documents and his termination of employment from Calbiotech. As previously noted, his termination of employment from Calbiotech was instead necessitated upon, and strictly the result of, his own erratic behavior and unprofessional conduct, including but not limited to his exceedingly poor performance in his assigned tasks, his perpetual tardiness

and unexcused/unauthorized absences from work during normal working hours, and his harassing/threatening conduct towards his co-workers. After multiple warnings being provided to him from upper-management to cease such conduct, and to adequately perform his tasks and be physically present as expected, Raya unfortunately left Calbiotech and David Barka no choice but to terminate his employment when such conduct continued. Simply put, in no way were any requests by Raya for benefit plan documents even a motivating factor, much less the specific intent, behind the appropriate and *necessary* business decision for Calbiotech and David Barka to terminate Raya's employment.

(ECF No. 147 at 23-24, 30-31.) [5SER0875-0876, 5SER0882-0883.] These factual contentions mirror the contentions and evidence Defendants presented at trial in November 2023. As of January 20, 2023, at the latest, Plaintiff had notice of the precise factual contentions that Defendants would seek to prove at trial regarding the reasons for terminating Plaintiff's employment. During the 21 months between Plaintiff's deposition and the trial, and the 10 months between the filing of Defendants' Memorandum of Contentions of Fact and Law and the trial, Plaintiff did not move to reopen discovery or otherwise notify the Court of what relief he would need to respond to this evidence at trial. Plaintiff has failed to demonstrate that the notice of these factual contentions was insufficient for him prepare his case for trial, including subpoenaing witnesses who could attest to his job performance, attendance, and conduct while he was employed by Calbiotech.

The Court finds that Defendants adequately raised their defense to Claim 4 that Plaintiff's termination was not motivated by any discriminatory reason, and instead

> Plaintiff's termination was due to what Defendants deemed to be Plaintiff's job performance issues. The motion to strike this defense is denied.

[1SER0009-0011:7-15.]

Lastly, Appellant is wholly mistaken, with his contention lacking credibility and evidentiary support, that "Appellees subsequently omitted the disputed defense … from the Proposed Final Pretrial Conference Order lodged with the court in February of 2023, causing [Appellant] to reasonably believe that [Appellees] had abandoned this forfeited defense." See OB at *35. On the contrary, the defense at issue was indeed included by Appellees within the proposed Final Pretrial Order adopted by the District Court, lodged with it nine months prior to the commencement of trial, clearly stating among its defenses to Appellant's Claim 4 in his SAC for alleged violation of § 1140 that "[t]he business decision to terminate [Appellant]'s employment at Calbiotech, Inc. had nothing to do with [Appellant] engaging in any activity protected by ERISA, and his termination was premised strictly upon legitimate non-discriminatory reasons." [4SER0647:11-14.] Moreover, Appellant even noted therein "his position that [Appellees] have failed to assert this 'same action' or 'legitimate reason defense' in a timely manner and it is waived." [4SER0647 at n.5.] Then, in addition to that, Appellant also lodged with the District Court an attachment to the proposed Final Pretrial Order wherein he raised the same argument under the heading "No Fair Notice." [5SER0739-0740.]

For the above reasons, the District Court neither erred nor committed any abuse of discretion in allowing Appellees to assert their defense, long-known to Appellant, that the reason for his termination was particularly due to performance issues and that his termination was for legitimate and non-discriminatory purposes entirely unrelated to any exercise by him of activity protected under ERISA. The District Court's decision should therefore be affirmed.[15]

## E. The District Court Did Not Admit Any Inadmissible Evidence at Trial, Nor Did It Rely on Any Inadmissible (or Otherwise Stricken) Evidence in Issuing the OFT.

In this Circuit, "[t]he standard of review for a district court's evidentiary rulings is deferential. A trial court has broad discretion to admit or exclude evidence, and we review its decision only for an abuse of that discretion. Even if there is error, reversal is appropriate only if we can say that the error affected the substantial rights

---

[15] Also of note, the District Court had previously determined Appellant's Claim 4 in his SAC for alleged violation of § 1140 was not filed within the applicable two-year statute of limitations and was thus untimely unless tolling applied based on Appellant's allegations of "fraudulent concealment." [1SER0089-0090:27-5, 0091-0092:28-4.] At that particular time, the District Court was obligated under the Federal Rules to accept those allegations of "fraudulent concealment" as pled in the SAC to be true. However, it was later proved at trial that Appellant's factual contentions underlying his allegations of fraudulent concealment (i.e., that he was provided a fraudulent document related to the 401(k) Plan after his termination of employment) were unfounded [1SER0040:1-8]; thus, Appellant's Claim 4 brought pursuant to § 1132(a)(3) for alleged violation of § 1140 would, in any event, be barred by the applicable two-year limitation period for that claim based on such finding. Therefore, Appellant's requested relief is inappropriate in any event under the circumstances.

of the parties." *In re Aircrash in Bali*, 871 F.2d 812, 816 (9th Cir. 1989) (internal quotations and citations omitted). This Court therefore "reverses only if it is convinced firmly that the reviewed decision lies beyond the pale of reasonable justification under the circumstances." *McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939, 953 (9th Cir. 2011). See also, *Lam v. City of Los Banos*, 976 F.3d 986, 1005 (9th Cir. 2020 ("[W]e will not reverse [a district court's evidentiary rulings] 'unless the decision was manifestly erroneous.' *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 141-42 (1997).") Thus, "[a] party seeking reversal for evidentiary error must show that the error was prejudicial, and that the verdict was more probably than not affected as a result." *McCollough*, 637 F.3d at 953.

Appellant takes issue with Appellees' production to him of 27 newly-labelled exhibits which they intended to use at trial (exhibits labelled as "CL" through "DL"). The newly-labelled exhibits were first produced to Appellant in the two weeks before the commencement of the bench trial; however, the substantial bulk of the documents within each of those newly-labelled exhibits either were contained in trial exhibits previously produced to Appellant, were previously exchanged with or shown to Appellant during discovery, or were in the form of written communications in which Appellant was either the sender or recipient. At trial, the District Court ruled on many of Appellant's objections to these 27 newly-labelled exhibits, the rulings of which are memorialized in the District Court's exhibit list. [4SER0597-

39

0603.] Appellant thereafter filed a post-trial motion to strike these exhibits on the grounds that they were not timely produced. In ruling on Appellant's motion to strike those exhibits, the District Court observed the following: The Court finds that Defendants have failed to present an adequate reason for the late production of many of these exhibits. However, to the extent these exhibits were already in Plaintiff's possession during the discovery period and/or are emails and correspondence sent to or from Plaintiff, Plaintiff has not demonstrated prejudice to their admission into evidence and his objections to this evidence is overruled. In particular, many of the trial exhibits at issue consist of emails and correspondence sent to or from Plaintiff and were previously shown to Plaintiff as exhibits during his February 22, 2022 deposition.[1SER0011:21-27.] In making those observations, the District Court found that, "to the extent the exhibits contain materials that were not provided to Plaintiff during discovery, were not in Plaintiff's possession during discovery, or were not emails and correspondence sent to or from Plaintiff, Plaintiff's objections to the evidence are sustained and the relevant pages of the exhibits are stricken." [1SER0012:1-4.]

Appellant has failed to identify any relevant pages of the exhibits which the District Court struck from the record but nevertheless considered or relied upon for purposes of issuing its final judgment. The reason for such omission by Appellant is a simple one—i.e., no such pages exist. Appellant argues, "[t]he district court relied

40

almost exclusively on exhibit CP, CQ, CW, CX, CZ and DF to support the court's Findings of Fact in their final judgment. … However, according to the admitted exhibit list filed by the District Court, Exhibits CP, CQ, and portions of CZ were never admitted into evidence [and, therefore,] [t]hese exhibits cannot be relied upon by law." *See* OB at 38. Appellant is mistaken. First, with respect to exhibits labelled "CP" and "CQ," the District Court clearly noted when citing those exhibits in its OFT that it "considers evidence of [Appellant]'s true motive for his resignation solely for the purpose of impeachment. … [T]he Court finds the evidence admissible for this limited purpose. *Cf. United States v. Caudle*, 48 F.3d 433, 435 (9th Cir. 1995) ('[I]t would be most surprising if … potential prejudice had any significance in a bench trial.'). The Court does not consider this evidence for any other purpose." [1SER0013 at n.2.] Next, with respect to exhibit labelled "CZ," seven of the pages within that exhibit were not admitted into evidence at trial and the District Court did not rely on any of those seven pages in issuing the OFT.

What Appellant inaptly refers to as "excuses" by Appellees for not having "produced" sooner those exhibits labelled CL through DL in the manner labelled prior to trial, are not excuses but rather are reasons—adequate or not—for such. The District Court noted in its OFT that "[it] finds that Defendants have failed to present an adequate reason for the late production of many of these exhibits." [1SER0013 at n.2.] Moreover, none of these reasons were "proven to be false at trial" as Appellant

asserts. As noted above, the production to Appellant of exhibits "CL" through "DL" *using those particular labels* did not occur until the two weeks before trial; however, as also noted, the substantial bulk of the numerous documents within each of those exhibits "CL" through "DL" either were contained in trial exhibits previously produced to Appellant, were previously exchanged with or shown to Appellant during discovery, or were in the form of written communications in which Appellant was either the sender or recipient, and thus had been previously produced to or seen by Appellant. Appellant cannot refute this.

Appellant finally argues that "[t]he prejudice to [him] is compounded because Defendants' late exhibits were all used to support Defendants' forfeited last minute defense that [he] was terminated for performance reasons," and "[t]he late production prevented him from providing his own evidence showing that the late documents were taken out of context, or based on hearsay, or simply not authentic, [and further] prevented [him] from bringing witnesses to attest to the fact that there were no changes in [his] performance or behavior between July and November of 2016[.]" *See* OB at 41. However, in retort to those contentions, and as previously cited, the District Court wisely noted, *inter alia*:

> Defendants' Answer "sufficiently put plaintiff on notice that [Defendants] intend to argue that his termination was not motivated by any discriminatory reason. [1SER0009:14-15.]
>
> …

42

Two months prior to the filing the operative Answer to the SAC, Defendants responded to Plaintiff's interrogatory asking for "the reason for Plaintiff Robert Raya's termination from Calbiotech in 2016" by stating: "Performance issues." (Pl.'s Trial Ex. 4 at 12.) This placed Plaintiff on notice that Defendants intended to argue that Defendants terminated Plaintiff's employment because of Plaintiff's poor performance.

Moreover, on February 22, 2022, Defendants deposed Plaintiff and questioned him at length about emails and documentary evidence that Defendants contend show Plaintiff's poor job performance in the months prior to his termination. (*See* Pl.'s Trial Ex. 25 at 205-23.) Specifically, Plaintiff was questioned and shown exhibits tending to show that Plaintiff missed management meetings, had unexcused absences from work, failed to timely respond to customer inquiries, and had a conflict with a fellow manager. During this deposition, Plaintiff disputed many of the conclusions that Defendants sought to draw from this evidence, but it further placed Plaintiff on notice of the precise "performance issues" Defendants would contend led to Plaintiff's firing, as well as the documentary evidence Defendant would use to support their contention at trial. Moreover, Plaintiff designated his deposition transcript as one of his trial exhibits, which further indicates that Plaintiff was aware these issues would be raised at trial.

Eleven months after Plaintiff's deposition, on January 20, 2023, Defendants filed a Memorandum of Contentions of Fact and Law … [with] factual contentions mirror[ing] the contentions and evidence Defendants presented at trial in November 2023. As of January 20, 2023, at the latest, Plaintiff had notice of the precise factual contentions that Defendants would seek to prove at trial regarding the reasons for terminating Plaintiff's employment. During the 21 months between Plaintiff's deposition and the trial, and the 10 months between the filing of Defendants' Memorandum of Contentions of Fact and Law and the

43

trial, Plaintiff did not move to reopen discovery or otherwise notify the Court of what relief he would need to respond to this evidence at trial. Plaintiff has failed to demonstrate that the notice of these factual contentions was insufficient for him prepare his case for trial, including subpoenaing witnesses who could attest to his job performance, attendance, and conduct while he was employed by Calbiotech. [1SER0009-0011:18-11.]

…

Many of the trial exhibits at issue consist of emails and correspondence sent to or from Plaintiff and were previously shown to Plaintiff as exhibits during his February 22, 2022 deposition. [1SER0011:25-27.]

Based on the foregoing, all the evidence challenged by Appellant which was decidedly admitted into evidence and not subsequently stricken was certainly done so by the District Court within the pale of reasonable justification under the circumstances, and the District Court's decision in so doing was in no way manifestly unjust. None of the challenged evidence ultimately relied upon by the District Court in issuing its OFT caused any prejudice to Appellant. The District Court's sound discretionary decisions with respect to its evidentiary rulings should be affirmed.

Within this section of his OB, Appellant makes a final allegation that his waiver and release of his claims by entering into the Separation Agreement and General Release following his termination of employment at the Company was not knowing and voluntary, and argues the District Court erred in so finding because, "[w]hen determining whether [Appellant] 'had independent advice, such as that of

44

counsel', the district court improperly conflated getting' (*sic*) independent advice' with [Appellant] having 'an awareness of his potential claim'." *See* OB at *42. Appellant further argues that, "[w]hen determining whether [he] had independent advice from counsel, the court found that this factor weighed in favor of finding the waiver knowing and voluntary despite the fact that evidence showed that the attorney [he] called never called him back and failed to reply to [his] email." *See Id.* Appellant is mistaken for the following reasons.

In determining whether a waiver or release of claims by a party is done so knowingly and voluntarily, "[t]he essential question is a pragmatic one: whether, in the totality of the circumstances, the individual's waiver of his right can be characterized as 'knowing and voluntary.'" *Laniok v. Advisory Comm.*, 935 F.2d 1360, 1368 (2d Cir. 1991). In making such determination, courts will consider a non-exhaustive list of factors, among them, "whether plaintiff had independent advice, such as that of counsel[.]" *Morais v. Cent. Beverage Corp. Union Emps.' Supplemental Ret. Plan*, 167 F.3d 709, 713 n.6 (1st Cir. 1999). "[The] list is obviously not exhaustive, and the absence of a single factor is not necessarily dispositive." *Laniok*, 935 F.2d at 1368 (quotation omitted).

While Appellant is correct that the District Court found this particular factor to, on balance, weigh in favor of finding his waiver or release of claims to indeed have been knowing and voluntary [*see*, 1SER0033:25-26], he is mistaken in his

assertion that the District Court erred in reaching that finding for the reasons stated in the following paragraphs. Moreover, even assuming for the sake of argument that the District Court had erred in reaching such finding, a contrary finding alone would not, ipso facto, tilt the balance such that Appellant's waiver/release was not knowing and voluntary under the totality of the circumstances; nor was there any clear error of judgment on the District Court's part in deciding that Appellant's waiver/release was of claims was knowing and voluntary. In addition, notwithstanding its finding following trial that Appellant had waived/released his remaining claims, the District Court addressed each of Appellant's remaining claims and found that each would nonetheless fail on the merits—*see*, *e.g.*, 1SER0038:9-11 ("[T]he Court concludes that this claim must be dismissed because Plaintiff knowingly and voluntarily waived the claim. Even if Plaintiff had not waived the claim, the Court would conclude that the claim fails on the merits"; *see also*, *e.g.*, 1SER0041:3-6 ("The Court has now concluded after trial that Plaintiff's ERISA retaliatory discharge claim fails on the merits. Accordingly, Plaintiff no longer has Article III standing to bring his breach of fiduciary duty claims.").

Contrary to his assertion, the District Court properly concluded Appellant did indeed have "independent advice, such as that of counsel" (i.e., the only issue of inquiry posed by this non-determinative factor in the test subject to consideration and analysis by the District Court), and even had "an awareness of his potential

claim" (to use Appellant's words), during the period in which he was considering whether to accept the terms of the Separation Agreement and General Release which he was presented with following his termination of employment with the Company. As the District Court wisely observed, Appellant did, during that period, "consult[] two independent lawyers, including one who specializes in ERISA law," and "[d]uring [his] 'lengthy interview' with the ERISA specialist, [he] was focused on, in his words, 'the best way to recover my benefits. (Defs. Trial Ex. DF[16] at 231.)"[17] [1SER0033:10-13.] Moreover, as the District Court further observed in its OFT:

> [T]his consultation demonstrates…an awareness of his potential claim for benefits and other relief at that time. Similarly, while the record does not reveal what [he] learned when he complained to the DOL prior to receiving

---

[16] Appellees are unable to discern if Appellant is attempting to argue that the District Court should not have admitted Trial Ex. "DF" [4SER0571-0572] insofar as it is within that range of trial exhibits (i.e., "CL" through "DL") Appellant takes issue with any documents therein having been received into evidence. The question here of Appellant's waiver/release of claims is raised within this section of his OB, arguing the District Court erred in receiving any of these documents into evidence, so there is some added confusion in this regard. However, to the extent Appellant is making such argument, the argument fails because, among the many other reasons, it was both an exhibit shown to Appellant at his deposition and was also in the original set of trial exhibits (produced to Appellant as Exhibit "U" [4SER0578-0579:25-15]) from which a substantial portion of the documents contained within those supplemental trial exhibits "CL" through "DL" was culled.

[17] Notably, this finding also clearly refutes Appellant's assertion in his OB that "the evidence showed that the attorney that [he] called never called him back and failed to reply to [his] email." See OB at 42. It would be a flagrant misrepresentation for Appellant to insinuate to this Court that no dialogue between him and the attorneys with whom he consulted during the relevant period took place, which is precisely the insinuation Appellant seeks to draw by making such representation.

> the [Separation] Agreement [and General Release], [his] complaint demonstrates his awareness of his claim. [Appellant]'s contact with attorneys and the DOL demonstrates [his] awareness of his right to seek independent advice and willingness to exercise that right.

[1SER0033:15-20.] *See also*, OFT at 28:1-6 ("Prior to receiving the [Separation] Agreement on December 6, 2016, [Appellant] had contacted the DOL to complain about Calbiotech's operation of the employee benefits Plan(s). During the Agreement's recission period, [Appellant] suspected he had grounds for litigation related to Calbiotech's employee benefit Plan(s), as evidenced by his consulting two lawyers, including one who specialized in the ERISA law." [1SER0029:1-6.]

The District Court subsequently reinforced its position when issuing its order denying Appellant's motion to amend findings or to alter or amend judgment, stating:

> Plaintiff does not dispute that he contacted attorney Strauss within the date range shown by the evidence at trial and identified in the August 13 Order, i.e., "between December 1 and December 12, 2016." (ECF No. 206 at 23.) However, Plaintiff disputes that the purpose of his contacting Strauss was "about his termination." *Id*. The record indicates that Plaintiff discussed with attorney Monson "the best way to recover [Plaintiff's] benefits [from Calbiotech]." (Defs.' Trial Ex. DF at 231.) **It is implausible that Plaintiff would contact two attorneys regarding recovering benefits from Calbiotech during the Severance Agreement's recission period—and less than two weeks after his termination—and would neglect to mention the fact that he was recently terminated by Calbiotech. But even if Plaintiff confined his attorney consultations to recovery of his**

> **ERISA benefits from Calbiotech without mention of his current employment status, it would have no influence on the significance of this evidence, which is that "Plaintiff had independent advice" and "Plaintiff had an awareness of his potential claim for benefits and other relief at the time."** (ECF No. 206 at 32.)

[2SER0103:4-17 (emphasis added).]

Based on the forgoing, the District Court correctly determined this factor to, on balance, weigh in favor of finding the waiver/release by Appellant to have been knowing and voluntary. However, even had the District Court erred in reaching its findings with respect to this factor, a contrary finding would not in any event tilt the balance such that Appellant's waiver/release was not knowing and voluntary under the totality of the circumstances.

The District Court's findings following trial should be left undisturbed and its judgment affirmed.

## VII.  CONCLUSION

The District Court did not commit any errors or abuse its discretion in the manners Appellant alleges. Appellant is not entitled the relief he requests and, in any event, his requested relief is inappropriate under the circumstances. There exists no basis to reverse any decision of the District Court in this action and such should therefore be affirmed.

/././

/././

Dated: September 1, 2025        SCHECHTER BENEFITS LAW GROUP LLP

By:   /s/ Corey F. Schechter
       MARC S. SCHECHTER
       COREY F. SCHECHTER
       13025 Danielson Street, Suite 260
       Poway, CA 92064
       Attorneys for Defendants-Appellees

## CERTIFICATE OF COMPLIANCE

I certify that pursuant to Fed. R. App. 32(a)(7)(C) and Ninth Circuit Rule 32-1, the attached Appellant's Opening Brief is proportionately spaced, Times New Roman font, has a typeface of 14 points and contains 12,306 words, including footnotes, as counted by the Microsoft Word word processing program used to generate this document.

Dated: September 1, 2025      SCHECHTER BENEFITS LAW GROUP LLP

By:  /s/ Corey F. Schechter
     MARC S. SCHECHTER
     COREY F. SCHECHTER
     13025 Danielson Street, Suite 260
     Poway, CA 92064
     Attorneys for Defendants-Appellees

## STATEMENT OF RELATED CASES

There are no known related cases pending in the Ninth Circuit.

Dated: September 1, 2025   SCHECHTER BENEFITS LAW GROUP LLP

        By: /s/ Corey F. Schechter
          MARC S. SCHECHTER
          COREY F. SCHECHTER
          13025 Danielson Street, Suite 260
          Poway, CA 92064
          Attorneys for Defendants-Appellees

{00494048.DOCX / 3}

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

### Form 15. Certificate of Service for Electronic Filing

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form15instructions.pdf

**9th Cir. Case Number(s)** | 25-2394

I hereby certify that I electronically filed the foregoing/attached document(s) on this date with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the Appellate Electronic Filing system.

**Service on Case Participants Who Are Registered for Electronic Filing:**

☐ I certify that I served the foregoing/attached document(s) via email to all registered case participants on this date because it is a sealed filing or is submitted as an original petition or other original proceeding and therefore cannot be served via the Appellate Electronic Filing system.

**Service on Case Participants Who Are NOT Registered for Electronic Filing:**

☐ I certify that I served the foregoing/attached document(s) on this date by hand delivery, mail, third party commercial carrier for delivery within 3 calendar days, or, having obtained prior consent, by email to the following unregistered case participants *(list each name and mailing/email address)*:

**Description of Document(s)** *(required for all documents)*:

Answering Brief and Supplemental Excerpts of Record Index Volume and Volumes 1 to 9

**Signature** | /s/Corey F. Schechter          **Date** | September 1, 2025

*(use "s/[typed name]" to sign electronically-filed documents)*

Feedback or questions about this form? Email us at forms@ca9.uscourts.gov

**Form 15**                                                                 *Rev. 12/01/2018*